# Mussleman's Appeal.

1. Ejectment will not lie by heirs against a widow in possession, nor dower by a widow against them; both must proceed by partition in the Orphans' Court.

2. The Orphans' Court has exclusive jurisdiction to make and enforce distribution of a decedent's estate.

3. A court of equity cannot compel an executor to pay the decedent's personal estate and enjoin against the sale of the real estate; the jurisdiction is with the Orphans' Court.

4. A testator directed his land to be sold without naming any one to execute the power. The control and direction of the sale was exclusively in the Orphans' Court.

5. The executor sold without the order of the Orphans' Court; the vendee entered into possession, but refused to comply with the contract. Equity had not jurisdiction to enforce specific performance.

6. If the power to sell be expressly conferred on the executor, the Orphans' Court has jurisdiction to control its exercise on the petition of a party in interest.

7. When time is not of the essence of the contract, a decree will be made against the purchaser if the seller can make a title at the time of the decree, unless there has been bad faith or an improper speculation attempted.

8. Generally a power to order includes a power to ratify.

9. Where a will orders land to be sold without naming the person to execute the power, the executor derives his power to sell, from the law acting upon the will and not from the court.

10. In such case it is the *exercise* of the power which is under the control of the court.

11. The Orphans' Court may ratify such sale in a case where it would confirm it, if made under a previous order.

12. The purchaser under such sale by an executor is a party to the sale, and on an application for ratification, he can be brought in by citation to protect his interest.

May 12th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Appeal from the decree of the Court of Common Pleas of *Cumberland county* : In Equity : No. 109, to May Term 1870.

[Mussleman's Appeal.]

In the court below this was a bill by John Mussleman, executor, &c., of Samuel Mussleman, deceased, against James D. Bell, to enforce the specific performance of a sale of the land of the decedent sold by the executor after his death.

The decedent died August 31st 1868; his will, proved September 7th 1868, contained the following provisions:—

"I will and order that my farm, with the appertenances, containing one hundred and thirty-six acres, be sold to the best advantage during the first ensuing fall after my death, subject, however, to a dower of four thousand dollars, the said four thousand dollars to remain in said farm for the benefit of my wife, or widow, Elizabeth, the interest of said four thousand dollars to be paid to her annually as long as she bears my name and continues to be my widow.

"Item. The first year after my death I will and bequeath to my widow one hundred and fifty dollars out of the proceeds of said farm.

"Item. As to all the rest of the money realized by the sale of said farm with the appertenances, I give and bequeath to all my children, equally to be divided between them, viz.: John Mussleman, Elizabeth Gerber, Ann Senseman, the heirs of Catharine Kost and Simon Mussleman.

"Item. I give and bequeath, after the death of my widow, the four thousand dollars which remains in said farm for her benefit, to all my children, equally to be divided between them, viz., &c."

He appointed his son John Mussleman executor of his will. No person was authorized by the will to sell the real estate. The widow elected not to take under the will.

On the 17th of October 1867, the executor exposed the testator's real estate to public sale under the following conditions:—

"2. That no person shall be allowed to retract his or her bidding.

"3. The purchaser shall pay immediately after the sale to John Mussleman, executor of Samuel Mussleman, deceased, a deposit of ten per cent. of the purchase-money and sign an agreement for the payment of the remainder, as follows, viz.:

"The one-third to remain on the farm as a dower during the natural life of Elizabeth Mussleman, widow of Samuel Mussleman, deceased, and the interest to be paid annually, on the 1st of April (commencing on the 1st of April 1870) to the said widow. The half of the remainder to be paid on the 1st of April 1869, when a deed shall be given; the balance on the 1st of April 1870, bearing interest from the 1st of April 1869 to be secured by judgment.

"4. The purchaser to give a mortgage for the security of said dower, and to pay the said dower in full at the death of said widow.

"8. Upon failure to comply with the foregoing conditions, the

15 P. F. Smith—31

money deposited shall, at the time above mentioned having expired, become forfeited to the vendor, who then shall be at full liberty, with or without notice, to resell the estate, and if on such sale there shall be any deficiency, the purchaser at this sale, neglecting to comply with these conditions, shall make good such deficiency to the vendor, and all expenses attending such sale.

"9. This property to be sold subject to the lease of the present tenant, for the term of one year from the 1st of April 1869."

The defendant became the purchaser, and signed the following paper on the same day :—

"I, James D. Bell, of Silver Spring, &c., do acknowledge this day to have become the purchaser of the farm of the late Samuel Mussleman, deceased, at public sale; said farm containing one hundred and thirty-six acres and eighty perches, at a legal sum of two hundred and nine dollars and fifty cents for each and every acre, amounting to twenty-eight thousand five hundred and ninety-six dollars and seventy-five cents; and I hereby bind myself, my heirs, executors and administrators, to comply fully with the conditions of sale."

The testator left a widow, four children, of whom complainant is one, and two grandchildren, children of a deceased daughter, who were minors.

The defendant when he purchased was well acquainted with the decedent and his family, and with the provisions of the will, and that the widow had refused to take under it. He paid the hand-money—ten per cent. of the purchase-money—and took possession of the property; changed the terms of the lease, to which it had been sold subject; cleared off a considerable piece of land; injured valuable timber and cut down walnut trees, &c., to the prejudice of the property. About the 1st of April 1869, when he was to pay his first instalment of the purchase-money and receive a deed, he declared that he would be ready at the time fixed, and that there was "no difficulty or impediment in the way."

The deed of the complainant as executor under the power of the will was, on 31st of March 1869, handed to defendant's counsel, who refused it on the 1st of April 1869; and on the 2d, 3d and 6th of April, the defendant himself "utterly refused to take the title and complete his purchase."

To obviate any objection to the conveyance under the power in the will, the widow and adult heirs executed releases which were offered to defendant, and the guardian of the minors was and is willing under the sanction of the court to make conveyance under the various Acts of Assembly—especially under the "Price Act;" "and all parties are still ready to execute any conveyance or perform any act or acts so as to convey the entire title of said tract of land, provided such conveyance or acts are required for the purpose."

[Mussleman's Appeal.]

The bill set out the foregoing facts.

The prayer was: 1, for specific performance; 2, that the defendant should pay the purchase-money due April 1st 1869 into court, and deposit there the securities for the balance as provided by the terms of sale; 3, for further relief.

In the *body* of the bill the name of the plaintiff was stated:—
"John Mussleman for himself, the other distributees, legatees, and widow of Samuel Mussleman, deceased."

The bill was endorsed:—

John Mussleman, executor of Samuel Mussleman, deceased, *v.* James D. Bell.

The title of the case was stated in the same way in the subpœna.

The defendant demurred, because—

1. The contract was made not with "John Mussleman for himself, the other distributees, legatees, and widow of Samuel Mussleman, deceased," but with John Mussleman, executor of Samuel Mussleman, deceased.

2. The law affords a full and adequate remedy.

3. The contract provides a remedy for non-compliance with its terms on the part of the vendee.

4. John Mussleman had no authority, either as executor or otherwise, to make the contract.

5. John Mussleman having failed to comply with the terms of the contract by at least a tender of a conveyance of "the farm of Samuel Mussleman, deceased," to the defendant, on April 1st 1869, the time fixed for that purpose, he is not now entitled to a decree for specific performance.

6. The deeds tendered are not a conveyance of "the farm of Samuel Mussleman, deceased," but merely a conveyance of the interests of the several grantors therein named in said farm to the defendant.

The Court of Common Pleas (Graham, P. J., delivering the opinion), sustained the demurrer and dismissed the bill.

The plaintiff appealed, and assigned the decree of the court for error.

*H. Hummerich* and *W. M. Penrose*, for appellants.—As to parties. Either title to the bill brought in all the parties in interest. The executor could have been compelled to act: Houck *v.* Houck, 5 Barr 273; McFarland's Appeal, 1 Wright 300; Douglas *v.* Harfall, 2 Sim. & Stu. 184; Cullen *v.* Queensbury, 1 Br. C. C. 101; Mare *v.* Malachy, 1 M. & C. 572; Doloret *v.* Rothchild, 1 Sim. & Stu. 590; Sugden on Vend. & P., § 196; Story's Eq. Pl., § 160, 170. Equity is not necessarily excluded because there is a remedy at law; 1 Story's Eq. Jur., § 718; Sugden on Vendors 31, 185, 755; Seton *v.* Slade, 7 Vesey 265; Forster *v.* Hayman, 2 Casey 266; French *v.* Maschall, 1 O'Connor & Lawson 465.

[Mussleman's Appeal.]

As to the authority of plaintiff to sell: Act of February 24th 1834, § 12, Pamph. L. 75, Purd. 282, pl. 61; Perkins's Profitable Book, § 547; Shepherd's Touchstone 449. The provisions of the act are for the benefit of the parties interested, and they have waived them: Follmer's Appeal, 1 Wright 121; Walworth *v.* Abel, 2 P. F. Smith 370. The purchaser would have got all he contracted for: Tiernan *v.* Roland, 3 Harris 437; Batten on Specif. Perf. 122, 279. The plaintiff had an inchoate title, which might be perfected by application to the Orphans' Court. It is sufficient if the vendor could make title at the time of the decree: Sugden on Vendors 222, 223; 1 Story's Eq. Jur., § 777; Ley *v.* Huber, 3 Watts 367.; Moss *v.* Hanson, 5 Harris 382; Weemes *v.* Brewster, 2 Har. & Grev. 390; Cotton *v.* Wood, 3 Monro 313–14; Tyne *v.* Williams, 3 Bibb 366; Pierce *v.* Nickols, 1 Paige 244; Findley *v.* Lynch, 2 Bibb 566; Hepburn *v.* Dunlop, 1 Wheat. 179; Paton *v.* Rodgers, 6 Mad. 256; Coffin *v.* Cooper, 14 Vesey 205; Sugden on Vend. 293; Esdaile *v.* Stephenson, 6 Mad. 366; Paton *v.* Rogers, Id. 256; Maginnis *v.* Fallon, 2 Id. 583; Langford *v.* Pitt, 2 P. Wms. 629. The defendant having refused to accept a title, tender was immaterial: Batten on Specif. Perf. 125; Heron *v.* Hoffner, 3 Rawle 400; Smith *v.* Webster, 2 Watts 478; Markley *v.* Swartzlander, 8 W. & S. 172; Eshbach *v.* Zimmerman, 2 Barr 313; Hall *v.* Holmes, 4 Id. 254; Hawk *v.* Greensweig, 2 Id. 295. Time was not here of the essence of the contract, and if it had been, the defendant should have given reasonable notice of his purpose to rescind. The defendant cannot avail himself of any of the objections he has made because he took possession of the property, and has so acted that he cannot put the vendors in *statu quo*: Sugden on Vend. 225; Fleetwood *v.* Green, 15 Vesey 594; Margravine *v.* Noel, 1 Mad. 310; Ex parte Sidebottom, 1 Mon. & Ay. 655.

*Henderson & Hays*, for appellees.—When the subject of a contract is the land itself, the purchaser has a right to a title clear of all defects and encumbrances: Herrod *v.* Blackburn, 6 P. F. Smith 103. Where the decree sought is merely for payment of money, equity has not jurisdiction: Kauffman's Appeal, 5 P. F. Smith 383; Dech's Appeal, 7 Id. 468; Tripp *v.* Bishop, 6 Id. 424. The executor had no authority to sell: Houck *v.* Houck, 5 Barr 273; McFarland's Appeal, 1 Wright 300. Every title is doubtful which exposes a party to litigation: Speakman *v.* Forepaugh, 8 Wright 371. Where the party is not diligent equity will not aid: Brightly's Eq., § 217–19. The defendant took possession under the assurance of a good title: Erwin *v.* Myers, 10 Wright 111; Freetly *v.* Barnhart, 1 P. F. Smith 281. It is doubtful whether the discretion of the court in dismissing the bill can be inquired into: Renninger *v.* Thompson, 6 S. & R.

[Mussleman's Appeal.]

1; Frederick *v.* Gray, 10 Id. 186; Nice *v.* Bowman, 6 Watts 29; M'Kee *v.* Sanford, 1 Casey 105; Helfenstein *v.* Leonard, 14 Wright 477.

The opinion of the court was delivered, July 7th 1870, by

Agnew, J.—In the early period of the Orphans' Court in this state, it occupied a low place in the judicial system; and even in the first quarter of this century, its decrees could be set aside collaterally: Messinger *v.* Kintner, 4 Binney 97; Snyder's Lessee *v.* Snyder, 6 Binney 483. In the latter case Judge Yeates questioned the doctrine, and did so again in Huckle *v.* Phillips, 2 S. & R. 10. It was not until the able and exhaustive opinion of Judge Duncan, delivered in 1824, in McPherson *v.* Cunliff, 11 S. & R. 422, which settled the proper position of the Orphans' Court, that it reached its true dignity, and the way was prepared for the revision of the Orphans' Court system, its jurisdiction, powers and practice, contained in the Acts of 29th March 1832, 24th of February 1834, and 16th of June 1836. Under these laws, the Orphans' Court came up to the full measure of a court of record, standing upon an equality with the others. At first, the true extent of the work was not perceived, especially by those who disliked to unlearn what they knew, and who took with difficulty to a new system. But its powers have grown clearer to the professional vision, and its utility increased in appreciation. Hence, in Seider *v.* Seider, 5 Whart. 208, it was held, that ejectment will not lie by heirs against a widow in possession, but the proceeding must be by partition in the Orphans' Court. The converse followed, that the widow of an intestate, dying seised, cannot maintain dower in the Common Pleas, but must resort to partition in the Orphans' Court: Thomas *v.* Simpson, 3 Barr 60; Evans *v.* Evans, 5 Casey 277. So the jurisdiction of this court is exclusive to enforce payment of legacies charged on land, and extends to the alienee of the title: Mohler's Appeal, 8 Barr 26; Gibson's Appeal, 1 Casey 191; Chess's Appeal, 4 Barr 52. Judge Rogers exhibits the decided advantage of the proceeding in the Orphans' Court for specific performance of a decedent's contract over the clumsy proceeding to prove contract in the Common Pleas. It is perhaps unfortunate that this court had, in an earlier case, held that the Common Pleas jurisdiction was not taken away: Wetherill *v.* Seitzinger, 9 W. & S. 177; Shull *v.* Stephens, MS., December 20th 1852. Then came Myers *v.* Black, 5 Harris 193, in which it was held, that ejectment will not lie to enforce specific performance of the contract of a decedent vendor, but that the exclusive remedy of the vendee is in the Orphans' Court, in pursuance of the terms of the Act of 1806, which requires the statutory remedy to be followed. This is reaffirmed in Porter *v.* Dougherty, 1 Casey 405; and see Anshutz's Appeal, 10 Casey

375.  Holiday *v.* Ward, 7 Harris 485, decides, that the question of advancement belongs wholly to the Orphans' Court, and cannot be settled in an action of ejectment.  The argument of C. J. Black, maintaining the exclusiveness of the Orphans' Court, is very forcible.  Shollenberger's Appeal, 9 Harris 337, decided finally, overturning Richards' Appeal, 6 S. & R. 464, that the confirmation of a guardian's settlement was a final decree against his ward for a balance found due to the guardian, for which a fieri facias could issue, and that the remedy was in the Orphans' Court alone.  The opinion of Judge Woodward is an able exposition of the jurisdiction and powers of the Orphans' Court.  Ashford *v.* Ewing, 1 Casey 213, decided, that since the Acts of 1832, 1833, 1834, and 1836, the Orphans' Court has exclusive jurisdiction to make and enforce distribution of the estates of decedents, and that a common law action will not lie for a distributive share. The opinion of C. J. Lewis contains a full statement of the subject of jurisdiction.  This was followed by Black *v.* Black, 10 Casey 354, in which the present chief justice takes strong ground for exclusive jurisdiction.  Loomis *v.* Loomis, 3 Casey 233, touches more immediately the case before us.  It holds, that the Court of Common Pleas, even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the Orphans' Court, and therefore it could not entertain a bill in equity to compel an executor to pay debts and legacies out of personal estate, and enjoin against the sale of the real estate.

I have been thus specific in stating the powers and jurisdiction of the Orphans' Court, because of the merits of this case, and our strong desire to sustain the bill in the Common Pleas.  But it cannot be done.  The case is this: Samuel Mussleman made his will on the 12th of December 1866, ordering his land to be sold to the best advantage, subject to a dower, as he terms it, of $4000, to remain for the use of his widow, during widowhood, and directing the proceeds of sale to be distributed among his children, and he appointed John Mussleman, the plaintiff in this bill, his sole executor.  The power of sale was given to no one by name or description, and it therefore fell within the 12th section of the Act of the 24th of February 1834, to wit: "All powers, authorities and directions, relating to real estate, contained in any last will, and not given to any person by name or description, shall be deemed to have been given to the executor thereof, but no such power, authority or direction, shall be exercised or carried into effect by them, except under the control and direction of the Orphans' Court having jurisdiction of their accounts." Thus it is evident that the jurisdiction over any sale made by executors under the power conferred by this section is vested exclusively in the Orphans' Court, for to that court alone is the control and direction over it given.  It is argued by the appellants,

that the power is vested in the executor by force of the will itself, because the distribution of the proceeds of sale is to be made by him, but the distribution itself is not vested in the executor by the terms of the will, and were it so, it has been held as most accordant with the express words of the law, the power of sale not being by name or description, the jurisdiction of the Orphans' Court is not excluded: John Wood's Estate, 1 Barr 371-2; Houck *v.* Houck, 5 Id. 273; McFarland's Appeal, 1 Wright 300; and even were the power expressly conferred upon the executor, the Orphans' Court has jurisdiction to control its exercise at the petition of a party in interest, under the Acts of 1832 and 1836, as we held at Philadelphia last term, in the case of Dundas's Estate, 14 P. F. Smith 325.

This exclusiveness derives still greater force from analogous legislation. The 15th section of the act of the 14th of June 1836, relating to assignees for creditors and other trustees, vests jurisdiction in trusts generally in the Court of Common Pleas, but is followed by this proviso, "that nothing herein contained shall extend to trusts created by will and vested in executors or administrators, either by the words of the will, or by the provisions or operations of law, whenever such executors or administrators are answerable to the Orphans' Court." This proviso has evident reference to the powers conferred on the executor by the 12th section of the Act of the 24th of July 1834. A similar division of power will be found in the Act of the 18th of April '1853, called "Price's Act," where, in all cases of real estate acquired by descent or will, the Orphans' Court takes jurisdiction, and in all other cases, the Court of Common Pleas.

The bill of John Mussleman, the executor, sets forth the death of Samuel Mussleman, his last will, the power of sale, the sale by him, as executor, to James D. Bell, for the sum of $29,015.75; Bell's knowledge of the will, his payment of $2859.67, as hand-money, taking possession of the land, changing the terms of the tenant's lease, clearing land and taking off a large quantity of valuable timber and other matters, and prays specific performance of the contract. Mussleman made this sale without an order or direction of the Orphans' Court, or a confirmation of his account. From what has been said, the case being within the exclusive jurisdiction of the Orphans' Court, under the 12th section of the Act of 1834, the sale by Mussleman was either wholly void, from want of an order of sale, or, if it can be ratified, it can be done only by the Orphans' Court. The court below was therefore right in sustaining the demurrer to the jurisdiction of the Common Pleas, though not precisely for the reasons given.

This brings us to consider of the decree we should make. From the facts stated, if the sale can yet be ratified by the Orphans' Court, the plaintiff should not lose his remedy, and he should

[Mussleman's Appeal.]

have specific performance. The remedy provided in the terms of sale is inadequate in a case like this, when the purchaser has taken possession, changed the character of the land in pàrt, and stripped it of valuable timber. The widow's dower constitutes no objection, as she has released. Owing to Bell's own acts, time was not of essence in the making of the title, and the doctrine of equity is, that when time is not of essence, a decree will be made against the purchaser, if the seller can make a good title at the time of decree, unless there has been bad faith, or an improper speculation attempted: Sugden on Vendors 249; 2 Story's Equity, § 777; Coffin *v.* Cooper, 14 Vesey, Jr., 205; Ley *v.* Huber, 3 Watts 367; Tiernan *v.* Roland, 3 Harris 429. The question then is, whether the Orphans' Court can ratify a sale made by an executor under the 12th section of the Act of the 24th of February 1834, without having made a previous order of sale. On general principles a power to order would include a power to ratify. But the executor in this case derives his power to sell from the law acting upon the will, and not from the court; and it is the exercise of the power only which is subjected to the control of the court: Wood's Estate, 1 Barr 371. Having the power at law, it would seem as if its exercise is not so absolutely void that it may not be ratified by the court, in a case where the court would confirm the sale, if made under its previous order. We are not without instances of ratification in analogous cases. In Klingensmith *v.* Bean, 2 Watts 486, an Orphans' Court sale made at a term after the order of sale had expired, and subsequently reported to the court and confirmed, was held to be valid by ratification. So, an order of publication directed to be made in two newspapers, and published in but one, was held to be good by ratification: Sankey's Appeal, 5 P. F. Smith 491. In Wood's Estate, *supra,* it was said in reference to an order of court directing a *lumping* sale, that it was an injudicious exercise of the controlling power of the court, and that the interests of the devisees would be better promoted by leaving the disposition of the estate in the discretion of the executors, who, it is to be presumed, are most competent to judge as to this matter. This was said, of course, on the ground that the power of control remained in the court, which could refuse to confirm it, if the sale were injudicious.

A question has been suggested, whether Bell, the purchaser, can be made amenable to the jurisdiction of the Orphans' Court. But there is no real difficulty in this. He is a party to the sale over which the court exercises control, and can therefore be brought in by citation to protect his own interests. This is supported by decisions in analogous cases. Thus, when the vendor and vendee of real estate are deceased, and intestate, in a proceeding for specific performance the administrator and the heirs of the vendee, as well as the heirs of the vendor, were required to

[Mussleman's Appeal.]

be brought into the Orphans' Court and made parties: Anshutz's Appeal, 10 Casey 375. So, in a case of legacy charged on real estate, the alienee of the devisee was brought into the Orphans' Court by citation, and made personally liable to payment by its decree: Gibson's Appeal, 1 Casey 191. In proceedings in partition in the Orphans' Court, the alienee of the heir is the proper party, and succeeds to the right of election: Ragan's Estate, 7 Watts 438; Painter v. Henderson, 7 Barr 48. The Orphans' Court may also bring in creditors, in cases of distribution of assets: Kittera's Estate, 5 Harris 416; Bull's Appeal, 12 Harris 286. So its decree in the widow's $300 provision is binding on creditors: Runyan's Appeal, 3 Casey 121; Spencer's Appeal, Id. 218. Provision is fully made for the exercise of its jurisdiction by the Orphans' Court, in the 57th section of the Act of the 29th of March 1832, and " on petition of any one interested, whether such interest be immediate or remote, setting forth facts necessary to give the court jurisdiction, the specific cause of complaint and the relief desired, supported by oath or affirmation, the Orphans' Court, or any judge thereof in vacation, may award a citation at a day certain, not less than ten days after the issuing thereof." This is followed by all the means of enforcing the decree of the court possessed by courts of equity and of law. The doctrine of Dundas's Estate, fully sustains the power, and, indeed, the duty of bringing in the purchaser, because of his interest in the sale.

Upon the whole case, therefore, we affirm the decree of the Court of Common Pleas, sustaining the demurrer and dismissing the bill, on the ground of want of jurisdiction, with costs to be paid by the appellant; but without prejudice to the right of the appellant to proceed hereafter in due course of law to obtain confirmation of the sale made by him as executor of Samuel Mussleman to James D. Bell, and to compel specific performance of the same by the said Bell.