# Williams' Estate.

*Executors and administrators—Decedent's estates—Title to personal property—Dispute as to title—Jurisdiction of Orphans' Court—Act of June 16, 1836, P. L. 784.*

1. Where personal property has at one time actually been in and formed part of the estate of a decedent, and has been parted with by a representative thereof, the Orphans' Court has jurisdiction finally to decide the question of ownership, and compel a surrender of it to the estate by one whose title is colorable only.

2. Where the property claimed is actually in a decedent's estate, the Orphans' Court has jurisdiction finally to decide the question of ownership, and incidentally, where the facts call for it to decree a final surrender of such assets to outside claimants.

3. The Orphans' Court may issue a preventive decree in the nature of an injunction in order to maintain the status quo, for the protection and preservation of property claimed by the estate of the decedent, the ownership of which is in dispute.

4. Where certificates of stock of a corporation have been transferred to an executrix who subsequently transfers the stock to herself individually and two other persons by separate certificates, and creditors of the estate intervene by petition and claim that the stock was an asset of the estate and a substantial dispute as to ownership is thus raised, the Orphans' Court has jurisdiction to decree that until further order of the court the persons to whom the stock had been transferred shall re-assign and re-trans-

fer it to the executrix. Such a decree merely restores the status quo to await due settlement of the estate; but the court cannot go further at the time of entering such decree and adjudicate the question of the creditors' claims against the estate, nor finally determine the ownership of the stock in question.

Argued March 25, 1912. Appeals, Nos. 315, 316 and 317, by Eugene Raymond, George J. Graham and Jennie F. Graham, from decree of O. C. Phila. Co., July T., 1909, No. 41, awarding injunction in Estate of John R. Williams, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition for restraining order.

The facts are stated in the opinion of the Supreme Court.

The court entered the following decree:

"Now, this ninth day of November, 1911, on considering the petition of J. W. Tyrrell and Associates, the answers of Jennie F. Graham, George J. Graham, and Eugene Raymond, respondents, the testimony and the report of the master, it is ordered, adjudged and decreed, in accordance with the prayer of the petition, that, until the further order of this court,

"Jennie F. Graham be, and is hereby ordered and directed forthwith to assign and transfer to Jennie F. Graham, executrix of the estate of John R. Williams, deceased, the 16,666 shares of the capital stock of the Amparo Mining Company, received from Jennie F. Graham, executrix, on or about July 9, 1909.

"George J. Graham be, and is hereby ordered and directed forthwith to assign and transfer to Jennie F. Graham, executrix of the estate of John R. Williams, deceased, the 16,666 shares of the capital stock of the Amparo Mining Company, received from Jennie F. Graham, executrix, on or about July 9, 1909.

"Eugene Raymond be, and is hereby ordered and directed forthwith to assign and transfer to Jennie F.

Graham, executrix of the estate of John R. Williams, deceased, the 50,000 shares of the capital stock of the Amparo Mining Company received from Jennie F. Graham, executrix, on or about July 9, 1909."

*Error assigned* was the decree of the court.

*William W. Porter,* for appellants.—The court had no jurisdiction: Wood v. Kerkeslager, 225 Pa. 296; McClean's Est., 11 Pa. D. R. 103; High's Est., 136 Pa. 222; McGrann's Est., 12 Pa. D. R. 219.

*Samuel S. Mehard,* with him *Frederick C. Newbourg, Jr.,* for appellees.—We submit that the jurisdiction of the Orphans' Court in this case is beyond question: Mussleman's Appeal, 65 Pa. 480; Crossetti's Est., 211 Pa. 490; Odd Fellows' Saving Bank's Appeal, 123 Pa. 356; Gilkeson v. Thompson, 210 Pa. 355; Neal's Est., 16 W. N. C. 441; Somers v. Hanson, 5 Phila. 87; Fretz's Appeal, 4 W. & S. 433; Wimmer's Appeal, 1 Whart. (Pa.) 96; Lewis v. Lewis, 13 Pa. 79.

OPINION BY MR. JUSTICE MOSCHZISKER, April 29, 1912:

John R. Williams commenced proceedings to recover 100,000 shares of the stock of the Amparo Mining Co. from the estate of Edward M. Paxson, deceased; he died and his executrix was substituted upon the record. It was determined that the stock belonged to Williams and the same was duly transferred to his executrix. After getting possession of this asset she transferred a majority of the stock to the appellants in this case, i. e., to herself individually, 16,666 shares, to her brother George J. Graham, a like number, and to Eugene Raymond, Esquire, 50,000, under a claim that these proportions of the stock belonged to the respective transferees and were not the property of the Williams Estate. Thereupon the appellees and one Young, claiming to be

creditors, respectively petitioned the Orphans' Court for an order on the appellants to restrain them from parting with the shares in question and for a decree that they should return the stock to the personal representative of John R. Williams, deceased, "to await the settlement of said estate." The parties to these proceedings agreed, "That William B. Linn, Esq., shall be appointed master and examiner in the matter of the petition for a restraining order filed by James M. Young; also in the matter of the petition for a restraining order filed by James W. Tyrrell and his associates." The master was accordingly appointed and took the testimony; after which he submitted a report containing elaborate findings of fact and conclusions of law and recommending a formal decree. Numerous exceptions were filed, but, without formally acting upon these or confirming the report, the court below adopted and entered the decree as recommended, viz, "Now ...... it is ...... decreed, in accordance with the prayer of the petition, that, until the further order of this court, ...... Eugene Raymond be, and is hereby ordered and directed forthwith to assign and transfer to Jennie F. Graham, executrix of the estate of John R. Williams, deceased, the 50,000 shares of the capital stock of the Amparo Mining Co. received from Jennie F. Graham, executrix, on or about July 9, 1909," with a like order as to the stock transferred to the other appellants. The appeals are from this decree. By stipulation of counsel duly filed it is agreed, "That the claim of James M. Young is a valid claim against the estate of John R. Williams, and it is further agreed ...... that the decision in the Tyrrell appeals shall stand as the decision of the Supreme Court in the Young appeals." There are 245 assignments of error, one of which goes to the decree, and the others to the findings and conclusions of the master.

The appellants presented their appeals on the theory that the court below had by its decree finally adjudged

that the appellees were creditors of the Williams Estate and had fixed the amount of the indebtedness to them, and further, that the court had finally determined that they, the appellants, were not the owners of the property respectively claimed by them; they contend that substantial error was committed, and attack the jurisdiction of the Orphans' Court.

We have read and considered the report of the master, the pleadings, the material testimony and the able arguments of counsel on both sides, and are brought to the conclusion that the only questions for our present determination are: What jurisdiction had the court below? What points did the court actually adjudicate? And, what is the scope and effect of the decree entered? Properly to adjudge these questions necessitates the consideration of at least three acts of assembly and certain of our decisions thereunder.

The Act of June 16, 1836, P. L. 784, sec. 19, provides: "The jurisdicition of the several Orphans' Courts shall extend to and embrace: ...... VIII. All cases within their respective counties, wherein executors, administrators, guardians or trustees may be possessed of, or are in any way accountable for any real or personal estate of a decedent"; and the Act of March 29, 1832, P. L. 190, Sec. 57, par. 1, that obedience to its orders and decrees shall be obtained "on the petition ...... of any person interested, whether such interest be immediate or remote." The Act of May 19, 1874, P. L. 206, Sec. 7, provides: "The said courts shall have power to prevent by order, in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which they shall have jurisdiction," and "this act was but declaratory of the law as it stood prior to its passage": Odd Fellows' Sav-Bank's App., 123 Pa. 356, 365.

In Tyson's Est., 191 Pa. 218, speaking by Mr. Justice MITCHELL, we said (p. 223), "The jurisdiction of the Orphans' Court to assist executors and administra-

tors in obtaining control of decedent's assets is very
extensive." (For a review of the general development
of the jurisdiction of the Orphans' Court, see the opin-
ion by Mr. Justice AGNEW in Mussleman's App., 65 Pa.
480; and for a discussion of the limitations thereon,
Power v. Grogan, 232 Pa. 387.) To come to the cases
bearing more directly on the points involved: (1) In
Brooke's App., 102 Pa. 150, a surety for a guardian had
possession of property belonging to the ward. Upon
application of the guardian the Orphans' Court of Phil-
adelphia County ordered the surety to hand over the
property to his principal, HANNA, P. J., saying (p.
154), "A guardian is but a trustee, and where he de-
posits with, or surrenders to, another the trust prop-
erty, either as his surety or a stranger to the trust, such
other person becomes a constructive trustee, and the
trust property may be followed in like manner as other
trust property"; and in affirming we said, "It is the
duty of the Orphans' Court to watch over their
(minors') property and to protect their rights therein.
It was therefore within a just exercise of its powers to
make an order that the property be paid over to the
guardian ......" (2) In Odd Fellows' Saving Bank's
Appeal, 123 Pa. 356, upon petition of an heir,
a citation was awarded against third parties alleged by
the petitioner to be in possession of property belonging
to the estate of a decedent, assigned to them by one of
the executors. An order was entered for the delivery
of the property. In affirming we said (p. 364) : "The
Orphans' Court has jurisdiction over the estates of de-
cedents. While its authority to try disputed questions
of title may well be doubted, it is very certain that it
has control of the assets which admittedly belong to the
estate of a decedent. ...... The court had juris-
diction over this property for the reason that it be-
longed to the estate." (3) In Marshall's Est., 138 Pa.
285, an executor pledged an asset of his decedent's
estate for his own debt. Upon the petition of an heir,

the custodian of the pledged property was ordered to
deliver it up, the court below saying that until the set-
tlement of the estate the property of the decedent was
in the possession of the court, and (p. 291), "in those
cases in which this court has never had possession of
the assets of decedents, ...... the jurisdiction be-
longs to another tribunal." We affirmed per curiam.
(4) In Mulholland's Est., 154 Pa. 491, where a guar-
dian had paid money belonging to his ward to the lat-
ter's mother, we held that the Orphans' Court had au-
thority to compel her by citation to pay the money back
to the guardian, stating (p. 500), "The court having
jurisdiction over estates of decedents, it follows the
fund ...... it need not call in the aid of a court
of law." (5) In Watt's Est., 158 Pa. 1, the respondent,
attorney and surety of the administrator, had posses-
sion of certain property of the decedent, and the Or-
phans' Court ordered him to pay over the value thereof.
In affirming we said, (p. 13) by Mr. Justice DEAN, that
the Orphans' Court "had jurisdiction over the estate
......; it was its duty to lay its hands on the as-
sets of this estate ...... and all persons are
amenable to the jurisdiction who have possession of the
trust property." (6) In Hinds's Est., 183 Pa. 260,
where a guardian pledged the property of his ward,
without an order of court, for the ostensible purpose of
improving the minor's real estate, and invested the pro-
ceeds in a security in which he had a personal interest,
upon the petition of the minor the Orphans' Court or-
dered the pledgee of the property to transfer and de-
liver the same to the ward. This was affirmed per
curiam. (7) In Gilkeson v. Thompson, 210 Pa. 355, we
held that an heir could not maintain a bill in equity to
secure a reassignment of a mortgage alleged to have
been fraudulently procured from the decedent, where it
appeared that a paper purporting to be a will had been
admitted to probate and that the plaintiff was con-
ducting a contest to have the alleged will set aside, say-

ing by Mr. Justice Brown (p. 360), that the plaintiff's
proper remedy was under the Act of May 19, 1874, P.
L. 206, which gives the Orphans' Court power to pro-
tect property over which it has jurisdiction; and add-
ing, "Though this jurisdiction for the protection and
preservation of property may be concurrent and not
exclusive, it is the one to which the appellant ought to
have resorted, for there his appeal from the probate of
the will was pending, and there, if he was entitled to
any relief, it could have been given him by a proper
order during the pendency of his appeal ...... "
(8) In Marshall v. Hoff, 1 Watts 440, an executor died
in possession of assets of his decedent, which assets
came into the hands of the former's administrator.
Upon appeal from the adjudication of the Orphans'
Court which awarded these assets to the estate of the
deceased executor, we reversed and decreed that they
should be held by the accountant for the benefit of the
person entitled thereto under the will of the first de-
cedent.   (9) In Miller's App., 84 Pa. 391, an executor
with power of sale sold lands not belonging to his de-
cedent, by mistake.  The Orphans' Court charged the
executor with the fund thus realized, and he appealed.
In reversing, we held that it was perfectly clear that the
property did not belong to his decedent, and that the
money realized was not an asset of the estate.  (10) In
High's Est., 136 Pa. 222, an executor charged himself
with certain money arising from the sale of property;
his account was confirmed and an award made of the
funds.   Afterwards the accountant made an effort to
get the money back through a claim at the audit of the
account of the administrator of the deceased distribu-
tee.   The Orphans' Court refused his claim, and in af-
firming, we said (p. 236), that the money could not be
shown to have been wrongfully included in the account,
"for the reason ...... that the fund has been judi-
cially ascertained to belong to the estate of ......
(the distributee)."   (11) In Smith's Est., 144 Pa. 428,

upon the adjudication of the account of an executor
certain coupons embraced therein were claimed by a
third party.  The facts involved were not disputed,
and the court below found in favor of the claimant,
which on appeal was affirmed.  (12) In Gaffney's Est.,
146 Pa. 49, a decedent in his life time made a bank de-
posit to the credit of himself as the "trustee for Polly
McKim"; and the account so stood at the time of his
death.  The bank paid the money to the decedent's ex-
ecutor who included it in his account.  Upon the audit,
on the claim of Polly McKim the amount of the de-
posit was awarded to her.  In affirming we said (p. 53),
"The money is now in the hands of the executor of
Hugh Gaffney; and if it really belongs to the estate of
Polly McKim no good reason is apparent why she
should proceed against the bank, and compel it to pay
the money the second time.  An action for money had
and received would lie against the Gaffney estate, and,
if such action would lie, it may be recovered in this pro-
ceeding in the Orphans' Court."  (13) In Qualters's
Est,. 147 Pa. 124, money was deposited in a bank in the
name of a wife.  Upon her decease the husband as her
administrator withdrew the deposit and included it in
his account.  At the adjudication he claimed that the
money was his individual property.  The claim was
disallowed for want of proof, and we affirmed.  (14) In
Crosetti's Est., 211 Pa. 490, money was deposited in the
name of a wife, upon whose death the husband as her
administrator withdrew the money.  He died and his
executors filed an account of the administration of the
deceased wife's estate, in which they included the fund
derived from the deposit.  At the audit they claimed
this fund as the property of the husband.  The Orphans'
Court held that the claim was not sustained.  In affirm-
ing, per Justice ELKIN, we said (p. 494), "It is true the
general rule is that no one can claim in the distribu-
tion of a fund in the Orphans' Court except through the
decedent as creditor, legatee or next of kin. ......

There is, however, an exception recognized in many cases, as for instance where the fund may be shown to be wrongfully included in the account either, because, though in the name of a decedent it is really a trust, or where the title or ownership is in another person. ...... The present case is clearly within the exception, and the court below had jurisdiction to pass on the same. ...... (p. 496). The present case is not the ordinary distribution of the funds belonging to the estate ...... but it is a contest involving the ownership of the funds deposited in the saving fund societies ...... The jurisdiction of the Orphans' Court only attaches because of the equity powers lodged therein." (15) In Hermann's Est., 226 Pa. 543, a son as the executor of his father included the stock and merchandise of a store in the inventory of the latter's estate, but in his account and at the audit he claimed a half interest in these assets, as a business partner of the decedent. The Orphans' Court assumed jurisdiction and decided that the alleged partnership extended only to the profits and not to the ownership of the stock and merchandise. We affirmed, saying by Mr Justice STEWART (p. 546), "It is to be noted that the partnership was first asserted by the accountant and that he voluntarily made it the subject of accounting. That the Orphans' Court has jurisdiction in such a case as this appears abundantly in Brown's App., 89 Pa. 139." (16) In Paxson's Est., 225 Pa. 204, we said, per Mr. Justice STEWART (p. 206), "The effort was to withdraw from the estate an item of property included in the inventory and fully accounted for. ......
The property being presumptively an asset of the estate ...... the court had full jurisdiction to adjudicate any question in regard to it which stood in the way of its distribution; it could even relinquish its control of the property if the legal right to it was with the claimant. The party claiming property in the custody of the law is the actor; he has a choice of forum and

remedy (p. 207). He can elect to proceed at common law for money had and received or he may submit his claim upon distribution proceedings in the Orphans' Court. ...... If he elect to pursue the latter remedy he voluntarily brings himself and his cause within the jurisdiction of the court; he is not thereby creating a jurisdiction where none existed before, but adopting one already established. The case is very different where the disputed property has never been within the grasp of the court but is in the possession of one claiming adversely to the estate. In the latter case the Orphans' Court has jurisdiction of neither person nor thing. ...... The learned auditing judge, because the amount involved was very large and the evidence conflicting directed an issue ...... We quite agree that the case was preeminently one which called for an issue; but the fact remains that the jurisdiction of the court in nowise depended upon the granting of the issue." (17) In Cutler's Est., 225 Pa. 167, a daughter as the agent of her father received securities belonging to him. He died and she became his executrix. She omitted these securities from the inventory filed, claiming that they had been given to her by her father during his life; whereupon she was cited to show cause why she should not include them as an asset of the estate. At the audit she exhibited deeds of gift signed by her father. The other parties in interest introduced evidence to show that at the time of the execution of these papers the father was mentally incapable. The Orphans' Court held that the securities belonged to the estate of the decedent, and surcharged the accountant. We reversed on the ground that the court below had no jurisdiction and that an issue should have been directed to the Common Pleas. In so doing we said, per Mr. Justice STEWART (p. 169), "The Orphans' Court is a court of limited jurisdiction, exercising only such power as is given it by statute, expressly or by necessary implication ...... (p. 170).

The jurisdiction of the Orphans' Court is limited to
the estate of which the testator died seized. With re-
spect to such estate it has full jurisdiction; but this
marks its ultimate limit. Whether a specific article of
property belongs to the estate, is a question standing in
limine; if it does not, the executor is not accountable
therefor, and it is beyond the power of the court to
control it in any way or charge liability on any one in
connection therewith. ...... (p. 171). If at tes-
tator's death the property is shown to have been in his
possession, or if for any other reason it was presump-
tively his, a mere denial of his ownership unsupported
will not oust the court of its jurisdiction, but the court
may proceed with its investigation so far as to inform
itself, whether the denial is made in good faith and a
substantial dispute exists. If the dispute be a sub-
stantial one, and the title be really involved, may the
court further proceed to settle and determine the mat-
ter in dispute? Certainly no authority to do so can be
found within the terms of the statute, and we think it
quite as clear that it cannot be implied from anything
in the act (p. 172). Such muniments of title as
those upon which this accountant here rested may be
overcome and oftentimes are, but the assault upon
them cannot be carried on in the Orphans' Court.
...... We must assume that the evidence offered
by the exceptants showed a substantial dispute as to
the validity of the written assignments. The question
thus presented was a preliminary one on the determi-
nation of which the jurisdiction of the Orphans' Court
depended. ...... (p. 173). Having once deter-
mined that a substantial dispute existed as to the own-
ership of these securities ...... the court should
have at once directed an issue to the Common Pleas as
it is empowered to do by the Act of March 29, 1832,
P. L. 190. A verdict upon the issue would have been
more than advisory; unreversed, it would have been
conclusive ...... (p. 174). It comes to nothing

that the appellant did not ask for an issue ......
It was the duty of the court, once convinced that the
dispute was substantial ......, to direct it."

Most of the cases reviewed may be classified as mem-
bers of one or the other of two general groups:   (a)
Those wherein it is ruled that the Orphans' Court has
jurisdiction finally to decide the question of ownership
and compel a surrender to a decedent's estate of assets
improperly held by one whose title is colorable only;
to this class belong cases numbered 1, 2, 3, 4, 5, 6 and 8
above.  In all of these the property claimed had at one
time actually been in and formed part of the estate of
the decedent and had been parted with by a representa-
tive thereof; no substantial dispute as to ownership
existed in any of them.  (b) Those wherein it is ruled
that the Orphans' Court has jurisdiction finally to de-
cide the question of ownership of property already
actually in a decedent's estate and, incidentally,
where the facts call for it, to decree a final surrender of
such assets to outside claimants; to this class belong
cases 9, 10, 11, 12, 13, 14, 15 and 16.  In each of these
the property claimed was actually in the estate, and
therefore, at least temporarily, in the custody and under
the jurisdiction of the Orphans' Court, when the claim-
ant voluntarily included the asset in an account stated
by him, or brought and submitted the issue of his own-
ership to that tribunal for its determination.  The com-
mon principle on which they turn is that, under such
circumstances, the court has jurisdiction to adjudicate
all questions standing in the way of the distribution of
assets in the estate, and when clear that they are in-
cluded therein wrongfully or by mistake it may relin-
quish control of the property to the real owner.  No. 7
does not belong to either of the above classes; it was a
case within the jurisdiction of the Orphans' Court to is-
sue a preventive decree in the nature of an injunction, in
order to maintain the status quo, for the protection and
preservation of property claimed by the estate of a

decedent the ownership of which was in dispute. Case
17 (Cutler's Est., 225 Pa. 167), is an instance where
the Orphans' Court went beyond the issuance of a pre-
ventive decree and attempted finally to adjudge a sub-
stantial dispute concerning the ownership of property
not included in the account or otherwise expressly de-
clared a part of the decedent's estate, and where it was
not even clear that the alleged asset was in the pos-
session of the decedent at the time of his death. We
there said that, (p. 171) "If at testator's death the
property is shown to have been in his possession, or if
for any other reason it was presumptively his ......
the court may proceed with the investigation so far as
to inform itself whether ...... a substantial dis-
pute exists. (p. 173) Having once determined that a
substantial dispute existed as to ownership ......
the court ...... should at once direct an issue to the
Common Pleas," and we added, that the verdict on such
an issue would be conclusive.

The present case, on its facts, is somewhat different
from any of those which has preceded it, but from the
authorities cited we can gather the controlling prin-
ciples. Here it had been judicially determined in Pax-
son's Est., 225 Pa. 204 (the record of which was intro-
duced in evidence), that the asset in question belonged
to the estate of John R. Williams, deceased; the certifi-
cate had been actually transferred to his executrix and
the stock was physically in his estate and presump-
tively part of it. The fact that the certificate stood in
the name of the executrix would be prima facie evi-
dence that the stock belonged to the estate: Qualters's
Est., 147 Pa. 124, 130; Gaffney's Est., 146 Pa. 49, 54;
Crosetti's Est., 211 Pa. 490, 496; Paxson's Est., 225 Pa.
204, 210. Under these conditions, the executrix in the
exercise of her discretion attempted to transfer a large
part of the stock to the appellants. The asset having
been in the possession of the decedent's estate, and "pre-
sumptively his" (Cutler's Est., supra), the Orphans'

Court had jurisdiction to entertain the petition of any, one with an interest, "whether such interest be immediate or remote" (Act of 1832, supra), for an order to restore the status quo pending the settlement of the estate, and in such a proceeding the court had authority to investigate the facts. But when it appeared that a substantial dispute existed as to the ownership of the stock, the Orphans' Court could go no further than to restore the status quo; for this purpose it could make an order that the property should be transferred back to the personal representative of the decedent, and thus keep the asset under its control pending a final settlement of the estate or of the disputed question of title. The claimants would then have their choice of "forum and remedy." They could "elect to proceed at common law," or they could "submit their claim upon distribution proceedings in the Orphans' Court" (Paxson's Est., supra, p. 207); should they fail to do either, then the Orphans' Court could treat their claim as abandoned and proceed to distribute the asset; or where the facts call for such a course the court could and should at the proper time direct an issue to the Common Pleas (Cutler's Est., supra, p. 173-174).

Without any desire unduly to restrict the jurisdiction of the Orphans' Court, and while freely acknowledging its full power to distribute and to protect decedent's estates, we feel that there should be no departure from the recent tendency not to deprive anyone, without his express or implied consent, of the ultimate right to trial by jury on a question of ownership of property where a substantial dispute exists on the issue. In discussing this subject, in Cutler's Est., supra, p. 171, referring to an executrix and property claimed by her in her individual capacity, we said, "The Orphans' Court has jurisdiction over her in her representative character and over the property which she holds as executrix; but with respect to her individual right of property she stands as clear of the power of the court

as any third party. One of these rights which ought not to be questioned at this late day is the right to have her case tried by a jury; a right not subject to be defeated or abridged by legislative enactment." As a rule this practice will cause no undue inconvenience. In the case at bar the determination of the ownership of the particular property in controversy by another tribunal, would not necessarily lead to a conflict of authority through the indirect adjudication of the question of the decedent's indebtedness to the petitioners and others while passing on the possible collateral issue of the solvency of his estate; for under the peculiar circumstances of a case like the present,—the investigation having been entered upon and the parties being properly in court for that purpose—if such a course be deemed necessary to protect the interests committed to its care and to insure an orderly and correct administration of the law in this respect, the Orphans' Court could, of its own motion, enter a preventive order restraining persons in the position of these appellants from trying the issues involved in their claim of ownership at common law until all other claims against the decedent had been duly adjudicated by that court and the solvency or insolvency of his estate established, or it could refuse an issue until this has been done. That in a proper case the Orphans' Court has the power to restrain persons from proceeding in the Common Pleas was ruled in Alexander's Est., 214 Pa. 369; also see Tyson v. Rittenhouse, 186 Pa. 137.

We conclude that the petitioners showed a sufficient interest to entitle them to the quantum of relief prayed for, but that the court below could not at this time finally determine whether or not they were bona fide creditors of the decedent's estate or the amount of the alleged indebtedness to them; in that connection these petitioners were only obliged to show that they had a prima facie claim against the estate, and that is all that could have been or was determined in the proceedings

under review.  Nor could the court below at this time
finally determine the ownership of the asset in ques-
tion; on the case as presented a substantial dispute ex-
isted on that point, involving not only the construction
of written documents but the consideration of oral testi-
mony, its meaning and the inferences to be drawn there-
from.  The appellants did not inaugurate these pro-
ceedings, and in view of Cutler's Est., supra, it cannot
he said that they submitted their claim of ownership
to the Orphans' Court for adjudication.  Furthermore,
the petitioners only asked that the stock be reassigned
"to await due settlement" of the decedent's estate, and
the decree recommended by the master and entered by
the court below, in terms, really goes no further than
the prayer of the petition.  We express no view on the
merits of this case; if the parties so desire they may
still have them tried and duly adjudged.  But we inter-
pret the decree as merely determining that the petition-
ers had shown a sufficient interest to entitle them to
move the court, that the decedent's estate had a pre-
sumptive right to the shares in question and that the
stock should be returned to it in order to restore the
status quo.  Upon this understanding, the assignments
of error are dismissed, and within these limitations,
the decree is affirmed.  The costs to be divided.