## Ficker's Estate

John G. Kaufman, for accountant.

Isidore Baylson, for Albertine F. Smith, claimant.

Harry B. Schultz, for Commonwealth.

NILES, P. J., nineteenth judicial district, specially presiding, July 14, 1934.— Bertha W. Ficker died March 28, 1932, unmarried, without issue, intestate, and leaving as her next of kin one brother, five children of a deceased sister of the full blood, one child of another deceased sister of the full blood, and two sisters of the half blood. The date of the death of the deceased sisters is not given. The award hereinafter made is based upon the assumption that these two sisters predeceased the decedent. . . .

One of the questions for determination is whether the Commonwealth is entitled to an award of transfer inheritance tax on the net amount of two insurance policies, $2,025.77, which was paid to Frieda Ficker as beneficiary. It appears that the beneficiary originally named was the "estate", but that the beneficiary was changed to Frieda Ficker on March 21, 1932, 7 days before death, and about 4 days after a mastoid operation. There is no allegation or proof of a want of mental capacity at the time the change was made.

The moneys collected from the insurance company never formed a part of this estate, nor were they paid to the executor. If any tax be due, it is payable by Frieda Ficker, the beneficiary named, and not by the executor.

On the same day that she changed the name of the beneficiary in the insurance policies, the decedent, who owned five shares of stock of the twenty-fourth series of Claghorn Building & Loan Association, five shares of stock in the twenty-fifth series, five shares in the twenty-sixth series, and ten shares in the twenty-eighth series, made what is alleged to be a transfer of these shares to Albertine F. Smith. It appears that in the back portion of the pass books there was a blank form of transfer reading as follows:

"I, ....................., for value received, have transferred, assigned, and set over, and by these presents do transfer, assign, and set over to........ .................all my right, title and interest in.........shares of book no........., series........... of the capital stock of Claghorn Building & Loan Association.

"Witness my hand and seal this ..... day of .............., A. D. 19....

"Sealed and delivered in the presence of      ................. (Seal)"

After the word "I", there was inserted "Bertha W. Ficker, 1636 N. Broad St., Phila., Pa."; after the words "set over to", the words "Mrs. Albertine Ficker Smith (sister)". The book numbers, the number of the shares, the number of the series, and the date were also inserted. All these insertions are in the handwriting of the decedent. She did not, however, sign opposite the word "Seal". Opposite the word "seal" appears the name "C. T. McCarthy, M.D."

Doctor McCarthy testified that on March 21, 1932, while making his rounds, he went into the room occupied by the decedent; that she was in bed; that the nurse in attendance, Genevieve McKenna, stated in the presence of the decedent that the decedent desired him to witness the transfers of said stock; that he complied with the request; and, thinking that the place for him to sign as a witness was on the bottom line of the transfer blanks, he signed at that place.

It was stated that the whereabouts of Genevieve McKenna, the nurse, were unknown.

Albertine F. Smith was not called as a witness by either side.

The secretary of the building and loan association testified that the books and transfers therein were presented to him by Mrs. Albertine F. Smith on March 25, 1932; that he told her to present the books to him on the meeting night of the association on March 28, 1932, that she did appear at the association meeting, and a notation was made on the books of the presentation of the assignments; that subsequently a notice of withdrawal was received from her; and that the books were placed on the withdrawal list.

Albertine F. Smith was not present when the transfers were written by the decedent or at the time when Doctor McCarthy signed as a witness; and there was no evidence of what occurred between the time when Doctor McCarthy appended his signature to the various books and the time when they were presented to the secretary of the building and loan association.

It further appears from the testimony that the decedent had signed a check in the sum of $52 payable to Claghorn Building & Loan Association. This check was dated March 28, 1932. The decedent died at 1:30 a. m. on that date. It was stated by counsel that she was accustomed to draw checks in advance of the meeting night of the association and to date them as of the night when the association met.

On page 4 of the account appears the following notation:

"These books are not in the possession of accountant. There was an unsigned

transfer to a sister, Mrs. Albertine Ficker Smith, who claims these shares. Witness signing on book refuses to give statement. Heirs object to suit. Value problematic. Building and loan may be liquidated."

Mr. Kaufman, representing the administrator in his individual capacity, contends that there was no assignment of the shares of stock because the decedent did not sign on the line reserved for her signature, and even though the writing itself was sufficient to operate as an assignment there was no proof of the delivery of said assignment.

Mr. Baylson, representing Mrs. Albertine F. Smith, contends that the auditing judge has no right to pass upon the question of the title to the building and loan association stock because the accountant has not charged himself with the value thereof.

In this connection, it should be pointed out that Albertine F. Smith is one of the next of kin and as distributee is entitled to a one fifth share. The question in this case is one of law rather than one of fact, and the right of trial by jury on an issue of fact is therefore not involved.

The amount of the award to Albertine F. Smith necessarily is dependent upon first ascertaining whether these shares formed part of the estate of the decedent at the time she died, or did not. If they did, then her right to participate in distribution would be dependent upon her transferring or surrendering the shares to the administrator. The auditing judge is of the opinion that he has jurisdiction to decide the questions of law involved: Williams' Estate, 236 Pa. 259.

The auditing judge is of the opinion, and so rules, that the signature of the decedent at the end of the transfer is not essential. An assignment, unlike a testamentary disposition, need not be signed at the end thereof. As it is admitted that the blanks were filled out by the decedent, the inference is unavoidable that she intended the writing to operate as a transfer: Donohoe's Estate, 271 Pa. 554; Conrad v. Shapiro, 29 Dist. R. 1143, and Benz v. Langan, 5 Northamp. 139.

While a delivery of the assignment is necessary in order to vest title to the stock in the transferee, such delivery may be inferred from the circumstances of the case. When the decedent died, the books with the transfers therein were in the possession of Albertine F. Smith. There was no evidence that she obtained possession thereof in a fraudulent manner, and there is always the presumption of right doing. The auditing judge is of the opinion, and so rules, that it can fairly be inferred there was a delivery of the books with the assignments therein contained. He reaches this conclusion despite the fact that, after the transfers were witnessed, a check was drawn for the payment of dues which bore a date 7 days later than the assignment, for it was stated, and the statement was not contradicted, that she was in the habit of making out checks for payment of dues in advance of the date of the meeting night and dating them as of the day the association met.

As the auditing judge has found that there was a transfer of this stock, if there be any tax due thereon under section 1(c) of the Act of June 20, 1919, P. L. 521, as amended by the Act of June 22, 1931, P. L. 690, reading as follows:

"When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death.

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final

disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause",

it is payable by the donee and not by the administrator of this decedent. Whether the transfer be considered an absolute gift or a gift mortis causa, the title vests at the time of the transfer and not as of the time of death. The only difference is that where the gift is one mortis causa the title is divested if the donor recovers from his last illness.

It appears that the administrator, Charles Ficker, was indebted to the decedent on a note in the sum of $434.57, together with interest thereon from January 2, 1932, to date. It was contended that the commissions of $151.95 are applicable to the payment of the note plus interest. The account shows a balance of $2,559.12, and if the amount of the note, plus interest, is added to the balance for distribution, Charles Ficker, as next of kin, would be entitled to one fifth thereof, or approximately $600. In other words, his indebtedness to the estate can be paid by deducting it from his distributive share, and it is not necessary to apply the commissions for that purpose. The question whether or not the commissions of an administrator can be applied in payment of his debt becomes therefore a purely academic one, and it is not necessary for the auditing judge to determine the question.

It is contended by the Commonwealth that it is entitled not only to tax on the net balance shown for distribution, but, in addition, is entitled to tax on the amount owing by the administrator to the estate. Here it should be noted that the indebtedness of the administrator to the estate is included in the inventory and appraised at $1. The Commonwealth is entitled to tax on the net balance for distribution among the next of kin. If the administrator had paid his indebtedness out of funds other than his distributive share of the estate, the contention of the Commonwealth would, of course, have to be sustained, but this is not the fact. Because of the indebtedness of the administrator to the estate, the shares that the other distributees will be paid by the administrator are increased, and the share of the debtor is correspondingly decreased. The aggregate for distribution, however, is not varied. The auditing judge therefore denies the claim for tax on the debt.

In the inventory and appraisement appears the following item:

"Cash in Integrity Trust Company, withdrawn by undertaker before letters were taken out, $90."

The $90 is extended short and does not enter into the total of the inventory and appraisement. In the petition for distribution, it is stated that what the undertaker actually collected from Integrity Trust Company was $98.79 instead of $90. The petition for distribution asks the auditing judge to determine whether said amount should be added to the estate for the purpose of inheritance tax. The $98.79, from the statement made, belonged to the decedent. No credit is taken in the account for the payment of the funeral expenses. If the $98.79 were added to the debits, there would be a corresponding credit, and it would not increase the net balance for distribution on which the Commonwealth is entitled to claim tax. As the administrator never actually received the $98.79 nor paid it out, the auditing judge accepts the account as stated, and the Commonwealth will be awarded tax on the net balance of principal. . . .

And now, to wit, July 14, 1934, the account is confirmed nisi. .

NOTE.—No exceptions were filed to the foregoing adjudication.