## Qualters' Estate.　Qualters' Appeal.

*Presumption as to money in bank in wife's name.*

Money deposited in a bank in the name of a wife is prima facie the money of the wife. When claimed by her husband, on her decease, the burden is on him to overcome the presumption by proof that it was his property, and in this instance the evidence submitted was insufficient for that purpose.

*Mistake—Correction of account.*

If the money in controversy really belonged to the husband, but was charged in his account as administrator of his wife by mistake or in ignorance of his rights, the court might have permitted him to withdraw it from the account: Marshall v. Hoff, 1 W. 440; Miller's Ap., 84 Pa. 391; High's Est., 136 Pa. 236.

Argued Nov. 10, 1891. Appeal No. 323, Oct. T., 1891, by M. Qualters, from decree of O. C. Allegheny Co., June T., 1891, No. 26, dismissing exceptions to adjudication. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

On June 30, 1891, the account of Martin Qualters, administrator of the estate of his wife, Ann Qualters, deceased, was called for audit.

At the hearing, it was made to appear that the administrator had filed his account on April 22, 1891, charging himself, inter alia, with " March 19, 1890, to cash from Dollar Savings Bank, $3,490.41," and showing balance for distribution of $2,777.01. By a memorandum placed upon the account, the accountant

claimed this entire balance as being of his individual estate, stating that the deposit in the Dollar Savings Bank was of his own moneys held by the decedent as trustee for him, and that he had been compelled to take out letters of administration " in order to maintain his rights." It was noted on the inventory, also, that the fund was claimed by the accountant in his own right. The deposit in the savings bank was in the name of the wife alone.

On June 9, 1891, exceptions were filed by distributees to the claim made by the accountant.

After hearing and argument on the evidence, the auditing judge, OVER, J., filed the following adjudication:

The decedent, Ann Qualters, was the wife of Martin Qualters, the accountant. In his account, he charges himself with $3,490.41, amount deposited in the Dollar Savings Bank in her name, and $216 rents collected from a lease made by Mrs. Schenley to her. By memoranda indorsed on the inventory and account, he alleged that the decedent held this money and the leasehold in trust for him, and upon the audit claimed that the fund should be distributed to him. The next of kin object to this claim: (1) That this court has not jurisdiction ; and (2) that the evidence is not sufficient to sustain it.

1. The legal title to the money deposited in the Dollar Savings Bank and to the leasehold, was in the decedent, and at her death descended to her administrator, subject to any equitable title of her husband which might exist. Upon his theory of the case, had she not been his wife, he could have sustained an action against her in her lifetime to recover the money ; and he claims now as a creditor, having a lien upon it by reason of an alleged trust.

If the trust were established, it might also be said that the fund was wrongfully included in the account, and that this case belongs to the same class as Marshall v. Hoff, 1 W. 440, and Miller's Ap., 84 Pa. 391, which establish the exceptions to the rule laid down in McBride's Ap., 72 Pa. 480. See, also, opinion of PAXSON, C. J., High's Est., 136 Pa. 236.

The objection to the jurisdiction of the court does not, therefore, seem to be well founded.

2. But the objection that the claim is not sustained by the evidence seems to be. There are two presumptions against it.

The first is that the money and leasehold were originally the separate estate of the decedent; and the second, that, if not, they were a gift by the husband to her: Earnest's Ap., 106 Pa. 317.

To overcome the first, the claimant showed that he had given his wife money on several occasions, but the amounts are indefinite, and it does not appear what disposition was made of it.

His employment was irregular, and his earnings may not have been more than sufficient to support the family. It also appears that she had, prior to her marriage to him, some money of her own, and that subsequently to their marriage she received from one of her children by a former marriage, money earned by him. There is no apparent reason why the money should not have been deposited in Martin Qualters' name, if it was his, nor why the Schenley lease should not have been made to him, if purchased with his money. He acted for his wife in obtaining the last renewal, signed her name to the lease, had full knowledge that it was made to her and made no objections. It is clear, therefore, that he has failed to overcome the first presumption.

But, even if he had, the evidence is not sufficient to rebut the presumption of a gift to the wife. The only evidence upon this point is that of Mrs. Whalen, a daughter of the claimant and step-daughter of the decedent, who testified that, upon different occasions, she had seen her father give the decedent money, and heard him say to her, " old lady take this and put it away; " and that he told her to save it for him and probably they would be able to get a place. She did not testify as to the amounts given, nor how often, and does not fix definitely the time; but the inference from her testimony is that it is more than twenty years since it occurred. Taking this evidence in connection with the fact that a place was purchased with his knowledge, in her own name, and that the bank account also stood in her name since the 17th day of August, 1872, it is certainly not sufficent to rebut the presumption of a gift to the wife.

The contention that the claimant was a competent witness to prove his claim is not well founded. He does not claim by devolution, but adverse to the estate, alleging that the fund was held by the decedent as his trustee : McBride's Ap., supra.

—A distribution having been reported, in accordance with the foregoing adjudication, the accountant filed exceptions alleging that the auditing judge erred:

1. In sustaining the first and second exceptions on part of exceptants, filed to the account. [4]

2. In concluding that Martin Qualters claimed the fund as a creditor having a lien upon it by reason of an alleged trust. [4]

3. In finding that the evidence was not sufficient to rebut the presumption of gift to the wife. [4]

4. In refusing the motion of Martin Qualters to amend, and not awarding the fund to him as therein set forth, he claiming the fund individually, and that he made his wife the custodian of the fund during existence of marital relation. [4]

5. In adjudging distribution of the fund to the exceptants, and not decreeing the whole fund to Martin Qualters. [4]

Said exceptions having been argued before the court in banc, the court, OVER, J., on September 18, 1891, filed the following opinion:

Unless this case can be distinguished from McDermott's Ap., 106 Pa. 368, the decree heretofore made is erroneous, so far as it relates to the money deposited in the Dollar Savings Bank. There seems, however, to be a marked distinction between the two cases. In McDermott's Appeal it appeared that the husband was illiterate, while the wife was not; that the moneys deposited were realized from a business carried on by him, and that at the time he went into business he had real estate valued at $2,000, which he sold. In this case, both husband and wife were illiterate, and he does not appear to have ever had any property or money, except his wages as a laborer, whilst his wife had money prior to her marriage to him.

The testimony shows that, when she was the widow of Capt. O'Day, residing in Ireland, she owned the leasehold of a tract of land, kept horses and cows, and sold milk; that she sold the leasehold before she left Ireland, and there and here, before her marriage to Qualters in 1860 and subsequently, loaned small amounts of money. She, also, prior to her marriage, kept a small store, and her children by a former marriage earned money selling papers. The account in the Dollar Savings Bank stood in her name since it was opened in August, 1872; and whilst there is no direct evidence that her husband

knew the deposits were made in her name, it is highly probable he did.

In Bachman v. Killinger, 55 Pa. 414, it was held that the possession by the wife of the husband's moneys is very slight evidence of the transfer of the ownership. If the mere possession by the wife of money admitted to have been originally the husband's is slight evidence, surely these facts are much stronger evidence that the deposits belonged to the decedent's separate estate, or that the money deposited was a gift from her husband, and would cast the burden of proof upon her husband to show (1) that it was his money, (2) that it was not a gift.

To sustain his claim he offered evidence showing his employment about steamboats and coal barges, when they were running, and at other work as a laborer, and that upon several occasions he gave his wages to his wife. It is evident that his employment was somewhat irregular, and it is probable that the money he gave his wife would not be more than sufficient to keep his family. James Adley, a witness called by the claimant who frequently worked with him, admitted that they could not make a very good living. The inference from Mrs. Whalen's testimony, is that her step-mother kept the money received from the claimant, about the house, and there is no evidence that she ever deposited it; and, as the testimony offered by him in regard to giving money to his wife relates to a period anterior to the opening of the bank account, its tendency is not to show that it is embraced in the deposits, but that it was used to purchase the Schenley leasehold.

In 1871, Mrs. Qualters had one thousand two hundred dollars in her possession, which she told Mrs. Carroll was her own and children's hard-earned money. With it, and six hundred dollars borrowed by her personally, she purchased a Schenley leasehold having the houses erected thereon. The lease was given as security for the loan and she repaid it. Her husband was a party to the negotiations, and without doubt had full knowledge that the assignment of the lease was made to her; and subsequently, on the first day of April, 1886, when his wife by reason of sickness could not go to the Schenley office to have the lease renewed, he went and had it renewed in her name. Mrs. Qualters collected the rents and paid the taxes.

If the money used in the purchase was earned by her and her children subsequently to her marraige to the claimant, all of it perhaps legally belonged to him, as, although they were not his children, they were minors and seem to have been members of his family. But, if this be true, he could relinquish his right to their and his wife's earnings, which would have been highly equitable. The fact that he permitted her to use the money to purchase the leasehold and take the title in her name, would be very satisfactory evidence of such relinquishment.

If the burden of proof be upon the claimant, the evidence is not sufficient to find that any of the money given by him to his wife was used in the purchase of the leasehold. But, even if it had been purchased with money so given, under the facts of this case and the authority of Earnest's Ap., 106 Pa. 317, the title to the leasehold vested absolutely in the decedent. The bank account was not opened until the next year after the purchase of the lease, and it was claimed upon the argument by Qualters' counsel, that the rents realized from it comprised the deposits. It is very probable this is the fact; and if it be, as the leasehold was the property of Mrs. Qualters, it would follow that the rents and deposits were also. The only direct evidence as to the source of the money deposited, is that of Mrs. Bullister, to the effect that Mrs. Qualters told her it was money she and the children earned after they grew up. Mrs. Bullister also said some rents of the houses went into the bank. Very little weight is to be attached to loose declarations of this kind. But, even if the deposits were made up in part of the earnings of Mrs. Qualters and her children, the fact that her husband did not claim them, but allowed her to deposit them in her own name, would be sufficient evidence that he relinquished his right to them.

A very careful consideration of all the testimony leads to the conclusion that the exceptions to the decree are not well taken and should be dismissed.

The accountant appealed.

*Error assigned* was the dismissal of the exceptions.

*Charles A. Sullivan,* for the appellant, cited : McDermott's

Ap., 106 Pa. 367; Parvin v. Capewell, 45 Pa. 89; Williams's Ap., 106 Pa. 116.

*John S. Ferguson*, with him *Joseph Crown* and *D. C. Reardon*, for the appellees.

PER CURIAM, January 4, 1892.

If the money in controversy really belonged to the appellant, and had been included in his account as administrator of his wife's estate, by mistake or through ignorance of his rights, the court below would doubtless have allowed him to withdraw it from said account: Marshall v. Hoff, 1 W. 440; Miller's Ap., 84 Pa. 391; High's Est., 136 Pa. 236. The difficulty is the appellant has failed to establish a trust. Prima facie the money belonged to appellant's wife in whose name it had been deposited, and the presumption thus raised has not been overcome.

The decree is affirmed, and the appeal dismissed at the cost of the appellant.                                                    C.