## Osmond's Estate.  Rhoades's Appeal.

*Decedents' estates—Trusts—Gift—Evidence—Estoppel.*

A married woman borrowed money from her father. After her husband's death, with the insurance money which she received from a policy upon his life, she offered to repay her father, but he told her to " keep it for the children." She then invested the money in her own name, and continued to live with her father, who supported herself and her two young children. She subsequently married again, and her father then began to make inquiries about the money. The daughter answered these inquiries by saying: " I can fix that by a will." A few days before the daughter's death the father prepared her will, which left everything which she owned to her children. At the same time she gave her husband a check for two hundred and fifty dollars which he accepted. 'The will was read to him, and he expressed himself satisfied with it in his wife's presence before she executed it. *Held*, (1) that the evidence was sufficient to establish a trust in the wife for her children; and (2) that the husband was estopped from claiming against the will.

*Mistake—Correction of account—Practice, O. C.*

A trust fund standing in the name of a decedent, and improvidently included in the executor's account, may be withdrawn.

Argued Feb. 5, 1894.  Appeal, No. 301, Jan. T., 1893, by plaintiff, Samuel Rhoades, guardian, from decree of O. C. Chester Co., dismissing exceptions to auditor's report distributing estate of Laura H. P. Osmond, deceased.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Reversed.

Exceptions to auditor's report.

The auditor, Robert S. Waddell, Esq., reported as follows :

" Your auditor finds that the decedent was first married to a Doctor Phillips, formerly of Cochranville, on Nov. 17, 1880; that he died June 6, 1884, leaving a widow, the decedent, and two children; that during her first marriage her father, Samuel Rhoades, loaned her over $4,500 to purchase a lot and build a house in Roxboro. About the time it was finished Doctor Phillips died, and she sold the property at a sacrifice and came to her father's house to live with her two children. She received $4,500 of life insurance on her husband's life, with which she offered to pay her father the amount of her indebtedness which was represented by promissory notes given to him from

time to time.  Her father declined to accept the money and told her to keep it for the children.  He destroyed the notes so that, as he testified, in case of death, nothing should appear to make any confusion.

" Did Mr. Rhoades establish a trust by parol in favor of his grandchildren?  Does the language ' I told her to keep it for her children ' create a trust making Mrs. Osmond the trustee and the children the beneficiaries ?  If this is a trust created by Mr. Rhoades, then the husband has no interest in the estate.  The entire fund belongs to the children.  In order to determine the question we must first get at the intention of the settler or donor.  Did he intend to impose a trust or do the words express only the motive of the gift ?

" Mr. Perry in his work on Trusts, vol. 1, sec. 117, and cases there cited, says : ' There is another variety of cases where trusts are sometimes implied from the words used, though an express trust is not  declared, as where property is given to a parent, or other person standing in relation of a parent, and some directions or expressions are used in regard to the maintenance of his family or children.'  The question to be decided in this class of cases is, as in the others, did the settler intend to create a trust and impose an obligation, or did he merely state incidentally the motive which led to an absolute gift.

" Instances where no trust is created, are where the bequest is to a person ' to enable him to maintain his children,' or an absolute bequest is made and afterwards the motive is assigned as ' that he may support himself and his children,' or ' for the maintenance of himself and his family,' or ' to and for her own use and benefit absolutely having full confidence in her suffi- cient and judicious provision for her children.'  Lewin on Trusts, vol. 1, sec. 137.

" Did Mr. Rhoades intend to impose a trust, or did he merely state incidentally the motive which led to an absolute gift ?  His daughter had come to live with him with her children after her first husband's death.  She had nothing to live upon but her husband's life insurance, which she offered to her father in pay- ment of her indebtedness to him, but he told her to keep it for her children.  It was a gift to her to enable her to maintain her children.  That it was the intention of Mr. Rhoades that this was to be a gift and not a trust is shown by his testimony.  If

it had been the intention of her father to create a trust for her children he would have had no concern about them on her second marriage. The money would have been theirs and nothing their mother could do would deprive them of it. It would have vested in them, and her death or marriage could make no difference to the trust fund. The money was loaned in the name of Laura H. P. Osmond individually. Mr. Rhoades knew this. She did not loan the money as trustee. It was the anxiety which her father felt for the children upon her second marriage that satisfied your auditor that Mr. Rhoades had no intention of creating a trust for them. The fear that her husband might acquire this money shows that he considered it as belonging to his daughter, for there was no opportunity or likelihood of his. inheriting it from them, or getting it in his possession, if it was in trust. But her delicate health indicated that she would not live long, and her husband would then inherit his share of the money. Her father knowing this, and feeling he had given her this money as a gift and anxious that the children should acquire it all, went to her, upon hearing of her second marriage, and said, ' How about the children now.' Why should he have made such an inquiry if it was already theirs? Why should he have felt any concern, unless he had given it to her absolutely? Her reply to this inquiry was, ' I can fix that by making a will.' She could, in her judgment, bequeath it all to her children by her will, and thus deprive her husband of any part of it, according to the wishes of her father. If she had been trustee. for her children she could not have disposed of it by will—she would only have been the conduit through which it passed to her children. Your auditor is of the opinion that the gift to the decedent was absolute; that her father's intention was that she was to receive the money as hers. The children were the motive of the gift. They were the motive which led to the absolute gift to their mother. Her father gave her the money as her own, so that she might have something to live on, as well as maintain and educate her children. Your auditor finds from the testimony of Anna E. Rhoades, a sister of the decedent, and Mrs. Sallie E. Boardman, that Mrs. Osmond considered the money as a gift to herself; that she did not consider herself a trustee for her children. Miss Rhoades knew all about the arrangement between Mrs. Osmond and her father

as to this money, and upon her sister's second marriage she told her she was much concerned about this money.  'What about the children if anything should happen to you?'  She said Mrs. Osmond told her that she should have no concern, that the money was to educate the children and that her husband would not touch it, for he told her he did not want her money.

" This testimony satisfies your auditor that the entire family, Mr. Rhoades, Mrs. Osmond and Miss Rhoades, all understood that the gift was an absolute one to her, and that there was no obligation or trust imposed on her.   Upon her second marriage her father and sister became concerned about the money.   Fearing that her husband, in some way, might get it in his possession, Mrs. Osmond assures them that he had promised her that he would not touch it—showing that she too felt it was hers absolutely, and that she would keep it safely for the children by making a will and leaving him no part of her estate.

" Your auditor, therefore, finds that the $4,500 was an absolute gift from Mr. Rhoades to Mrs. Osmond, and that the money belonged to her free from any obligations of a trust; that it is her estate and is to be distributed as such.

" It is contended that the husband having acquiesced in the testamentary provisions of his wife's will barred his right to claim adversely to the same.

" Your auditor finds from the testimony that Mr. Rhoades prepared his daughter's will during her last illness, and taking her husband into a room apart by themselves read him the will and asked if he was satisfied with it.   The husband replied that 'if that was her will he was satisfied.'   Mrs. Sallie E. Boardman testified that 'she was in the room when the will was signed : that Osmond was asked whether he was satisfied with its provisions and he said if that was Laura's will he was satisfied, that he did not want her money; that he did not marry her for her money.'   Osmond himself testified : ' Mr. Rhoades brought it (the will) in.  He took me into another room away from my wife.  He said this was Laura's will, and wanted me to read it and asked if I was satisfied.  I replied that I would have to be, but it was not as she said it would be if she made a will.'   Does his language to Mr. Rhoades estop him from claiming his share in his wife's estate under the act of 1855 ?

" To constitute an estoppel by matter in pais it must appear

(1) that the party has made an admission which is clearly inconsistent with the evidence he proposes to give ; (2) that the other party has acted upon the admission, and (3) that the latter will be injured by allowing the truth of the admission to be disproved : Eldred v. Hazlett's Admrs., 33 Pa. 307.

" Where an act is done or a statement made by a party the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel will be given to what would otherwise be a mere matter of evidence : Bispham's Equity, p. 350.

" Mr. Osmond's claim of his share in his wife's estate controverts his statement at the time of his wife's death ; but is it a fraud on any one ?  Is any one harmed or injured by allowing him to change his mind ?  There is no doubt that at the time of his wife's death he did make certain declarations to Mr. Rhoades and Mrs. Boardman that he was satisfied with his wife's will. There is no testimony, however, that he had any conversation with his wife in reference to her making this will.  He did not tell her that he was satisfied.  Nor was it shown that she prepared this will relying on his promise to her that he did not want her money.  If the estate had been settled other than in the ordinary and usual way, or if a distribution of the estate had been made equally between the two children by the executor, relying on the statements made by Osmond, perhaps this would be sufficient to estop him from controverting them.  His language is more in the nature of a promise to release, but there is no consideration to support the promise.  It is nudum pactum.  If for a valuable consideration he had promised to release his interest in his wife's estate, or for a consideration had agreed that the will should be drawn as it was, then he would be estopped from claiming any part of her estate.  But he is not estopped from claiming what the law gives him because he made certain statements at the time of his wife's death which did no injury to any one.

" Your auditor therefore awards W. H. Osmond, the husband, an equal share in the distribution of his wife's estate along with the children."

Exceptions to the auditor's report were dismissed.  The guardian of the children took this appeal.

*Errors assigned* were in confirming those portions of the auditor's report (1, 2) which decided that there was no gift to decedent's children; (3) no estoppel; (4, 5) awarding fund to husband; quoting schedule of distribution but not quoting exceptions.

*W. S. Harris*, for appellant, cited: Cauffield's Ap., 146 Pa. 49; Smith's Est., 144 Pa. 428; Dickerson's Ap., 115 Pa. 198; Perry on Trusts, §§ 96–8; Bisph. Eq. 178; Penna. Co.'s Ap., 144 Pa. 428; Seidel v. Guckert, 2 Mona. 45; Crawford's Ap., 61 Pa. 52; Keim's Ap., 136 Pa. 236; Marshall v. Hoff, 1 Watts, 440; Boileau v. Garber, 1 Montg. Co. R. 173; McBride's Est., 81 Pa. 303; Brown v. Barbey, 27 W. N. 559; Haydock v. Haydock, 34 N. J. Eq. 570; Leiper's Ap., 108 Pa. 381.

*Thomas W. Pierce*, for appellee, cited: McBride's Ap., 72 Pa. 480; Brown's Ap., 89 Pa. 139; Kreiser's Ap., 69 Pa. 198.

OPINION BY MR. JUSTICE MITCHELL, May 21, 1894:

The reply of decedent's father when she offered to pay him the money that she owed him, "keep it for the children," is consistent with the view of the learned auditor that the father intended a gift to his daughter, and the mention of the children was a mere expression of the motive for the gift, but it is also consistent with the other view that it was a gift in trust for the children, and the other evidence tends strongly to show that such was the understanding of the parties at the time and subsequently. The father knew that the money was not being spent by his daughter, but was invested in mortgages for accumulation, while she and her children lived with and were supported by him, and she took in sewing to provide in part for the current expenses of living. Matters remained in this condition until her second marriage, when the father immediately showed his anxiety about the children's money. The learned auditor treats this as an indication that the father knew the money had been given to her and not to the children, but it appears to us to tend more to the other view that he considered it the children's but knew it was not formally secured to them, and this is further confirmed by the answer of the daughter, "I can fix that by a will." Regarding it as a trust for the chil-

dren, the father might reasonably have been satisfied that it could and would be properly cared for by a will, but regarding it as her own, he would hardly have been put off with that answer, for few people are ignorant of the law that surviving husbands have interests in their wives' estates which cannot be interfered with by will.   The conduct of the father appears to us to show that he intended and considered his gift of the money as to the children.

On the other hand the conduct of the daughter tends to the conclusion that she regarded it in the same light.   She put it out immediately as an investment separate from the rest of her money, expressed her purpose not to touch it as it was for the children's education, and, at one time entertaining the intention of buying a farm with it, wanted the title put in the name of her son, the oldest child.   And, finally, her confidence, both when asked by her father after her second marriage, and upon her deathbed, that she could take care of the children's interest by a will, is only explainable on the ground that she regarded it as a trust, or the much less probable view that she was ignorant of the law as to the rights of a surviving husband.

On the whole case we regard the preponderance of the evidence as indicating that the gift was intended by the father to be for the children, and that it was so understood and accepted by the daughter.

Moreover the husband is clearly estopped from denying this conclusion.   Her will was read to him and he expressed himself satisfied with it in her presence before she executed it.   On the same day she gave him a check for two hundred and fifty dollars.   Would she have given him this money, and made her will in the form she did, if he had in any way indicated a denial or even a doubt of her right to dispose of this fund as the children's?   Neither she nor her father who wrote the will was learned in the law, but they seem to have known enough of the husband's rights to inform him of the contents of the will.   If he had not said he was satisfied with it, it is only reasonable to suppose that she might have called in counsel and put the title to the money in more satisfactory shape.   Her husband's assent prevented her from realizing the necessity of anything more than making the will.   It was not a mere deathbed assent made to relieve a dying wife, but was in accordance with what her dec-

larations show that he had all along led her to believe. Of this there is no denial on his part. He allowed her to die in the belief that she had established the children's right to the fund, and it is now too late for him to claim in opposition to her act.

The fund, though in the name of the decedent, being a trust, was improvidently included in the executor's account, and there is no difficulty in allowing its withdrawal: Qualters's Est., 147 Pa. 124.

Decree reversed, and record remitted for distribution in accordance with this opinion.