# McCauley's Estate.

*Decedents' estates — Executors and administrators — Assets — Property not belonging to estate—Gift to heirs from third party— Account—Evidence—Insufficiency.*

1. An executor or administrator cannot be charged in his account with money or property received or held by him otherwise than in his fiduciary capacity as a representative of the decedent, and where he has so charged himself he is entitled to withdraw such charge from his account.

2. An executor or administrator is chargeable with the assets of the estate, but not for property which may have come to him from an outside source as a gift to the heirs as individuals.

3. Where at the audit of the account of an administrator it appeared that decedent shortly before his death had been declared a bankrupt and left no estate, but that a former business partner of his had made a voluntary promise to him to make a gift to de-

cedent's heirs in the event of the promisor being successful in a certain business enterprise, and thereafter such promisor paid a considerable sum into the hands of the executor in fulfilment of such promise, such fund was not a part of the estate, the promise imposing no obligation enforceable either at law or in equity, and the administrator cannot be surcharged for distributing the fund among the heirs in the proportions directed by the donor, although not in accordance with the provisions of the intestate law.

Argued April 18, 1917. Appeal, No. 110, January T., 1917, by Helen R. Walbridge, Anna M. Starbuck and Charles H. McCauley, from decree of O. C. Blair Co., March T., 1915, No. 190½, dismissing exceptions to auditor's report, In re Estate of Thomas McCauley, deceased, and In re Guardianship of Minor Heirs of Charles McCauley, deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and WALLING, JJ. Affirmed.

Exceptions to report of auditor. Before BALDRIGE, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed exceptions to the report of the auditor. Helen R. Walbridge, Anna M. Starbuck and Charles H. McCauley appealed.

*Errors assigned* were in dismissing the exceptions.

*J. D. Hicks, Cola G. Parker,* and *Thomas H. Greevy,* with them *Daniel W. Scanlan* and *D. P. Pennywitt,* for appellants.

*O. H. Hewit,* for appellee.

OPINION BY MR. JUSTICE POTTER, June 30, 1917:

This is an appeal from the decree of the Orphans' Court of Blair County, overruling the report of an auditor appointed to pass upon exceptions to two accounts of H. K. McCauley, one filed in his capacity as surviving administrator of the estate of his father, Thomas McCauley, and the other as guardian of minor children of

his brother, Charles McCauley. Exceptions were filed to each account by the present appellants, and by agreement both sets of exceptions, which involved the same facts and the same questions, were referred to an auditor, and were considered together by both the auditor and the court below and were disposed of in one decree. The auditor surcharged the accountant, and reported a distribution of the balance arising from the surcharges, but the court sustained exceptions filed by the accountant to the auditor's report, and set it aside, and confirmed the guardian's account absolutely as filed.

From the facts as found by the auditor, it appears that Thomas McCauley died intestate on April 25, 1880, at Altoona, Blair County, leaving to survive him a widow, Ann McCauley, and four children, Charles, Herman K., Albert C., and Anna E. McCauley. Letters of administration on his estate were granted to the widow and one of the sons, Herman K. McCauley, the present accountant. The purpose in taking out letters of administration does not appear, for the auditor finds the decedent had no estate, and the bond appears to have been executed with the amount left blank. No inventory was filed. The widow died November 29, 1886, leaving Herman K. McCauley as surviving administrator. Decedent's eldest child, Charles McCauley, died August 9, 1889, intestate and leaving to survive him a widow, Clara B. McCauley, and four children, Thomas B. McCauley, Anna M. McCauley, now Starbuck, Helen R. McCauley, now Walbridge, and Charles H. McCauley, all of whom were minors. Subsequently Herman K. McCauley was appointed their guardian by the Orphans' Court of Blair County. Clara B. McCauley, the widow of Charles McCauley, died February 22, 1911, and his son, Thomas B. McCauley, died February 12, 1912, intestate, unmarried and without issue. But in 1904, the latter conveyed and released to H. K. McCauley, for a valuable consideration, all his interest in the estates both of his father and his grandfather.

Several years before his death, Thomas McCauley became financially embarrassed, and the auditor found as a fact that, shortly prior to his death, he was adjudicated a bankrupt by the United States District Court for the Western District of Pennsylvania. The auditor further expressly reported that he desired it to be understood that he found as a fact "that Thomas McCauley left no property of any kind at the time of his death, and that all of the property involved in these findings and this audit, described or referred to as property of the estate of Thomas McCauley, deceased, is property which D. K. Ramey, through individual efforts, because of his relationship to the parties interested, provided and paid to the respective heirs." Notwithstanding these findings of fact, the auditor undertook to charge the administrator with the various sums paid by D. K. Ramey, just as though they were assets of the estate of Thomas McCauley. This was not consistent with his finding of fact that Thomas McCauley was possessed of no property at the date of his death. His estate could acquire no property rights that were not in existence at the time of his death. The administrator could be charged only with the value of such property as came into his hands as representative of the estate, and not with that which may have come to him as representing the heirs as individuals. The general rule on this subject has been stated in 18 Cyc. L. & Pr. 1136, as follows: "An executor or administrator cannot be charged in his account with money or property received or held by him otherwise than in his fiduciary capacity as the representative of the decedent." So in 11 Ruling Case Law, 178, Sec. 194, it is said: "As a general rule an executor or administrator may be required to account as such only for property coming into his hands which constituted assets of the estate."

The court below approved the auditor's findings of fact but held that, as Thomas McCauley died without having at the time any estate, or any property of any

kind, the auditor erred in charging the administrator
with funds which afterwards came into his hands as
gifts for the members of the family of Thomas McCauley,
and which could not, therefore, be properly regarded as
assets of his estate. The report of the auditor in this re-
spect was, therefore, overruled, the court saying in its
opinion: "The sum and substance of this controversy is
that Thomas McCauley died without any estate. D. K.
Ramey, prompted by a commendable motive, desired to
distribute equally some funds to the McCauley children,
and he did it in a way that satisfied himself, and appar-
ently the McCauley children. No complaint was ever
raised by any of them; it was only years afterwards that
the children of Charles endeavored to obtain more than
they would have received if the administrator had col-
lected the $10,000, the $19,500, and divided the Altoona
Iron Company stock equally. This would not be in ac-
cordance with the law, nor in conformity with the evi-
dent wish of D. K. Ramey." From the decree entered
pursuant to this opinion, the children of Charles Mc-
Cauley have appealed, and the fundamental question is,
whether the evidence shows that the estate of Thomas
McCauley was possessed of any assets with which the
administrator was chargeable, and for which he is bound
to account.

It appears that Thomas McCauley was associated for
many years with his brother-in-law, D. K. Ramey, and
others in the development of certain tracts of timber and
coal land in Clearfield, Center and Cambria Counties.
Prior to his death, however, he had lost his entire inter-
est in these lands and in the business, and, when he died,
had no ownership therein. In order to protect his own
interests, Mr. Ramey had acquired the greater part of
the properties in question. There is no intimation that
this was not done with perfect fairness to McCauley, or
that Ramey was under any legal obligation whatever to
the latter in this connection. The auditor finds that
Ramey became "burdened with the effort of trying to de-

velop said lands himself and thereby save his own money invested."

During the last illness of Thomas McCauley, Ramey promised him that, if he should be successful in the development of the Clearfield County property, "he would share some of the earnings and profits with his—Thomas McCauley's—family," not with his estate. Ramey's promise was a voluntary one, without valuable consideration, and the money which he afterwards paid in fulfillment of the promise was clearly a gift to the family of his sister and her husband. The promise imposed no obligation on him that could have been enforced either at law or in equity.

The auditor reported that at the time of the death of Thomas McCauley, in April, 1880, his son Charles was largely indebted to the firm of Ramey & Co., and that D. K. Ramey and Thomas McCauley had discussed this indebtedness; that Mr. Ramey urged settlement, and in September, 1881, Charles McCauley made up a statement showing that he was indebted to Ramey & Co., in an amount exceeding $9,000. Mr. Ramey then took the first step in redeeming his promise to Thomas McCauley, by giving to Charles the sum of $10,000, allowing him credit for that amount and a further sum of $700, interest thereon, and paying him in cash the difference between the credit thus allowed and the amount of his indebtedness. In so far as Mr. Ramey was concerned, the sum thus allowed to Charles McCauley was purely a gratuity made in keeping with the promise to his father, and the auditor found that it was under and by virtue of this promise that Ramey paid the $10,000 to Charles McCauley a year and a half after Thomas McCauley's death. The sum had no proper place in the account of the administrator. It did not pass through the hands of the accountant or his coadministrator. It is true that Mr. Ramey secured an order from the administrators requesting him to "pay to Charles McCauley, one of the heirs of Thomas McCauley, deceased, $10,000......he to receive nothing more until

each of the other heirs receive a like amount." This order was probably secured by Ramey as a matter of precaution, but if he was not indebted to the estate, and the evidence shows that he was not, it afforded no ground for surcharging the administrator with the amount named in it.

The next item that is questioned, is a payment of $19,500 made by Mr. Ramey some twenty-one years after the death of Thomas McCauley. The auditor found that on or about April 23, 1901, Ramey sent for H. K. McCauley and handed him a check for $19,500, saying: "I asked you to come in for the reason that I want to give you a check, in accordance with my promise to your father and mother, for $19,500. I have redeemed the Altoona Iron Company stock which I want you to have. That will give each of you with this $19,500 about equal to that I gave Charles." The auditor found that this was a donation from Mr. Ramey in keeping with his promise. It was made to the children of Thomas McCauley and, taken in connection with the Altoona Iron Company stock, which the donor said he had redeemed and wanted them to have, it was intended to make the four children, including Charles, share about equally in his bounty. We can find nothing in the evidence which would justify treating this donation as an asset of the estate of Thomas McCauley.

The remaining matter in question, is the stock of the Altoona Iron Company. The original certificate for fifty shares held by Thomas McCauley was hypothecated by him in 1875, and there is no evidence that he ever redeemed it. As he became a bankrupt shortly before his death, the presumption is, that, if there was any margin between the actual value of the stock, and the amount for which it was hypothecated, the trustee in bankruptcy would have disposed of the stock and used the margin for the benefit of creditors. At any rate, we have the finding of fact by the auditor that at the time of his death, Thomas McCauley had no property, and the further

finding that all the property with which the auditor was dealing, including the stock in the Altoona Iron Company, was the gift of D. K. Ramey. In addition, we have the finding that Mr. Ramey, who had also pledged stock of his own as collateral for the same indebtedness and as part of the same transaction, secured the release of the stock from hypothecation and gave it to Mrs. McCauley and the children; and that, when he gave to Mr. H. K. McCauley the $19,500 in cash, he said that it, taken in connection with the Altoona Iron Company stock, would about equalize the shares of each of the children with the amount which he had given to Charles. When the stock was pledged as collateral, the pledgee was entitled to have it transferred upon the books of the company, but the fact that this was not done, was of no special importance. When Mr. Ramey took over the stock he could have had it transferred, and so could Mr. H. K. McCauley, when it came under his control. If the old certificate was lost or mislaid, a new one could have been obtained in the usual way by filing with the company a bond of indemnity. Had the transaction been between strangers no doubt greater care would have been observed in this particular, and the stock would have been transferred on the books of the company. But Mr. Ramey was dealing with his sister and with his nephew, and the latter was secretary of the Altoona Iron Company. Doubtless the subsisting family relation, and the familiarity of the parties concerned, both with the facts attending the transaction and the affairs of the company, accounted for the loose way in which the matter was conducted. The cash dividends upon the stock were collected by H. K. McCauley, the accountant, and, by mutual agreement and consent of the four children of Thomas McCauley, were paid to their mother up to the time of her death on November 29, 1886, from which time the dividends were equally divided among the four children, until August 9, 1889, when Charles McCauley died. After his death one-fourth of the dividends was

paid to his widow for the benefit of herself and children, until 1892, when such payments were stopped. Mr. McCauley testified that he continued this division of the income from the stock until he lost hope of getting enough funds to equalize the amounts received by himself and his brother and sister, with the sum which had been paid to his brother Charles. It was not until nine years after the payments had been discontinued that he received from Mr. Ramey the sum of $19,500 for that purpose. The fact that accountant charged himself with the Altoona Iron Company stock, and then claimed credit for it as having been distributed as belonging to himself, his brother and sister, is not important. He was entitled to withdraw the charge from the account, if it appeared that in fact the stock did not belong to the estate: Qualter's Estate, 147 Pa. 124, 130; Osmond's Estate, 161 Pa. 543, 550.

After carefully considering all of the testimony in the case, in the light of the earnest argument of counsel for appellants, we are satisfied that the findings of fact by the auditor are fully justified, and that the court below drew the proper conclusion therefrom, in holding that the estate of Thomas McCauley was not possessed of assets with which the administrator was chargeable, or for which he is bound to account.

The assignments of error are overruled, and the decree of the court below is affirmed.