## Estate of Sarah J. Lidstone.

*Wills—Probate—Testamentary capacity—Issue—D. V. N.—Refusal of issue.*

On an appeal from the admission of a will to probate, if the evidence before the court fails to show by its manifest weight that a testatrix lacked testamentary capacity or was unduly influenced, an issue devisavit vel non is properly refused.

Lack of testamentary capacity is not proven by a lapse of memory or inaccurate statements on the part of a woman seventy-eight years of age.

Argued October 26, 1927.  Appeal No. 1, April T., 1928, by Citizens Trust Company, Guardian of Evelyn L. Lidstone, a minor, from order of O. C., Clarion County, August T., 1925, No. 36, in the matter of the Estate of Sarah J. Lidstone, deceased.  Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.  Affirmed.

Appeal from Register of Wills.  Before HARVEY, P. J.

The facts are stated in the opinion of the Superior Court.

The court ordered the will admitted to probate.  Exceptants appealed.

*Errors assigned* were various findings of fact, and the decree of the court.

*H. M. Rimer,* and with him *A. A. Geary,* for appellant.

*J. M. McGill,* of *McGill & McGill,* and with him *Corbett and Rugh,* for appellee.

OPINION BY TREXLER, J., March 2, 1928:

James S. Lidstone presented to the Register of Wills a paper, dated June 17, 1925, purporting to be the last will of Sarah J. Lidstone.  No letters testamentary were granted as a dispute arose as to the probate and the Register certified the entire record to the Orphans' Court as provided by the 18th section of the Act of the 7th of June, 1917, P. L. 415.  At the hearing, the court decided that the will should be admitted to probate and from this decision, the present appeal is taken.

James S. Lidstone, executor and sole beneficiary

under the will, was the only son of the decedent, another brother having died prior to her death, leaving to survive him a widow and five minor children. The testatrix and her son, James, had lived together and then had become estranged and he and his family left her abode. There was no friendly intercourse between the two for sometime until in May, 1925, she sent for his wife who thereafter paid her mother-in-law several visits. The testatrix told her to have a will written that she wanted "Jim" to have her entire estate. The present will was then prepared.

In the presence of two witnesses, one of them a physician, the will was read aloud and the testatrix declared it to be her will, but said that she wanted the children of her deceased son to have $2,000 insurance, whereupon the son who was the sole beneficiary told her to go ahead and sign the will and he would see that the $2,000 would go to the parties designated.

As to incapacity: The doctor who witnessed the will testified that the testatrix, at the time of the execution, "was of sound mind, memory and understanding" and the other witness stated that testatrix appeared to him to be in that state. He testified to a rational conversation held with the testatrix at that time. The appellant has attempted to support her case by calling a number of witnesses as to the condition of this decedent prior to the making of the will. Some of the neighbors testified that she was weak in body and weak in mind, that her memory dwelt on long past occurrences, recent events she forgot very soon and sometimes repeated references to the same subject in her conversation. This is not uncommon in people of advanced years, the decedent being 78 years old, but this would not incapacitate her. The conclusion of the witnesses that this testatrix was not capable of making a will was not verified by any facts

which would prove such assertion. "In a will contest, the opinion of the witnesses, lay or expert, are of little value when confronted by established facts." Guardian T. & S. D. Co. v. Heidenreich, 290 Pa. 249. She had been a woman of methodical habits and very independent and as she became aged, she was careless and depended largely upon her neighbors to supply her wants, but this did not prove her mentally incompetent to make a will. Sickness very often is accompanied by lack of energy and helplessness and it is evident that this decedent was not as strong mentally and physically as she was in the prime of her life. This may be said of very many old people. Old age, sickness, distress or debility of body neither prove nor raise a presumption of incapacity. Wilson v. Mitchell, 101 Pa. 495; Lawrence's Estate, 286 Pa. 58. She knew what she had; she knew who her relatives were; she had strength of mind enough to make particular application of the insurance; and knew what disposition she was making of her property.

As to undue influence: The testimony shows that she was the actor in the matter; she sent for the son; she directed the will to be made and at its execution, she insisted upon certain things to be promised before she would sign it. It would seem that the decedent had a mind of her own and that she was not under the control of or influenced by her son. As she was old and sick, she desired to make peace with her child and he being nearer to her than anyone else, it was quite natural that she should give him her estate. The insistence by her at the time of the making of the will that the children of her deceased son should have the insurance indicated that she still had a certain amount of mental vigor, enough to assert her rights, so we may conclude that as far as to the matters occurring at the making of the will, there was no evidence of undue influence.

The appellant argues that a special burden to prove the absence of undue influence is placed upon the beneficiary because of the confidential relationship existing between him and the testatrix. The lower court states that there is nothing to show such relation existed and a reading of the testimony supports the conclusion. We quote from the judge's opinion: "The business affairs and advisers of Mrs. Lidstone were neighbors, and entirely disinterested. The first overtures for reconciliation were from Mrs. Lidstone. The first time her son James saw her after their estrangement was the morning he came with the will all prepared for execution ...... the will has been prepared by a third person on instructions of an intermediary at the instance of Mrs. Sarah J. Lidstone. When read over to her it does not contain a provision she desires therein ...... It is not yet executed. No executor is yet appointed. In it James S. Lidstone is named sole beneficiary. No one else is affected by the provision she wishes made for the payment of the $2,000 insurance money except James. She states what she wishes and James says—'All right, mother, I'll see they get the $2,000.' Before signing she impressed a trust for the payment of the $2,000 to Dick's children upon James whereupon she proceeded to sign, and the will was duly executed." No confidential relation is shown in the presentation of these facts.

It is argued that this is not the decedent's will because the provision as to the $2,000 insurance was not inserted. Such arrangements have been enforced and do not avoid the will. Hoffner's Estate, 161 Pa. 331; Osmond's Estate, 161 Pa. 543; McAuley Estate, 184 Pa. 124; Fickes' Estate, 59 Pa. Superior Ct. 535; Washington's Estate, 220 Pa. 204; Porter v. Wolf, 272 Pa. 93.

The court was right in its conclusion that there was no reason why an issue of devisavit vel non should

be awarded. If the evidence fails to show by its manifest weight that the testator lacked capacity or was unduly influenced, the court should order the will probated. Lawrence's Estate, 286 Pa. 58.

The decree of the Orphans' Court is affirmed. The appellant to pay the costs.