## Hoehl's Estate.

Argued October 14, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

D. M. *McCloskey*, with him *S. W. McGinness*, for appellant.

*Wm. B. McFall*, of *Dalzell, McFall & Pringle*, for appellee.

OPINION BY MR. JUSTICE BARNES, March 23, 1936:

Dorothea Van Buren Hoehl, who was a resident of Pittsburgh, died on December 28, 1932, leaving her will dated June 24, 1932. Her will was duly probated on January 4, 1933, and letters testamentary were granted to the executors named therein, one of whom was her husband, the appellant here. The husband elected to take against the will on December 11, 1933. The election was duly executed and delivered to the executors of the estate, pursuant to law. The decedent was survived by her husband, but left no children.

Three nieces of decedent filed in the court below their petition as residuary legatees under the will to annul the election. The sole ground laid in the petition was that the right of election was barred by a verbal agreement to abide by the provisions of the will, which the husband is alleged to have made with the decedent. After hearing, the court below decreed that the election be annulled and stricken from the records. Exceptions were thereafter dismissed and final decree entered, from which this appeal is taken by the husband.

From the testimony it appears that decedent and her husband were an elderly couple who had lived happily together for some twenty-five years, to the time of decedent's death. During part of that time they had commingled their funds in joint accounts, and had engaged together in the business of buying, improving and selling real estate. Their home was located at No. 4245 Bryn Mawr Road, Pittsburgh. This property consisted

of a lot of ground with a two story brick dwelling and double garage. It appears that the ground was purchased by the husband on or about April 27, 1922, but the cost of the buildings erected thereon had been paid out of the joint funds of the parties. By deed dated January 7, 1924, duly recorded, the appellant conveyed the property to his wife, the decedent, for a nominal consideration.

On June 16, 1932, at the request of decedent, a form of will was prepared for her at a trust company in Pittsburgh. At this time decedent was seriously ill and about to leave Pittsburgh to have an operation performed. The will so prepared did not meet with her approval, and on June 22, 1932, accompanied by her husband, she took the unsigned will to Alexander J. Barron, Esq., a member of the Pittsburgh Bar, and discussed with him, in appellant's presence, certain changes she desired to have made therein. She then directed Mr. Barron to prepare a deed conveying the Bryn Mawr Road property to her husband, for a consideration of one dollar. The deed was prepared, executed and recorded. Two days later, on June 24, 1932, the will, having been revised and rewritten, was executed by her.

Under the terms of this will, after directions as to burial and the erection of a head stone, she devised and bequeathed her estate in trust, naming her husband beneficiary of the net income for life, and upon his death the corpus of the estate, after the payment of certain legacies to named nieces and others, was to be distributed to her three nieces who are the appellees here.

The personal estate of decedent was appraised for inheritance tax purposes at $23,377.50; the real estate, consisting of four parcels, exclusive of the Bryn Mawr Road house, was appraised at $36,500, with incumbrances of $25,000, leaving a net value of $11,500.

Appellees contend that the husband had made a verbal agreement with his wife to accept the deed for the Bryn Mawr Road property and the income for life under

her will, in lieu of his right to take against the will; and further, that his course of conduct at the time by the acceptance of the deed, the participation in the preparation of the will, and, subsequently, the retention of two installments of income paid to him after the death of his wife, estopped him from electing to take against the will.

Appellant denied that any agreement was made with the decedent respecting her estate. He testified that his wife desired that he should own outright and free from any trust the Bryn Mawr Road home, and that its conveyance to him was not pursuant to any agreement between them. He admitted that he was satisfied with the provisions of his wife's will at the time it was made, but after her death he found that the taxes, interest, repairs and carrying charges on her real estate absorbed almost the entire income of her estate in trust.

Mr. Barron, the scrivener of the will, was called as a witness for appellees. He testified that he had discussed the conveyance and the will at length with decedent, in her husband's presence. "With care and patience" he talked with her for the purpose of ascertaining "all her wishes" and to know "exactly what she wanted." The concern of decedent, according to the witness, was to make provision for her husband. He testified: "She, however, wanted that he should have something of his own outright, that he could do with as he pleased." This disinterested and credible witness said that during the conversations he had with decedent and her husband, there was no reference made to an agreement, or to a surrender by the husband of his right to take against the will.

The petition to annul the election contains no averment as to the material terms of the alleged agreement, and from it we cannot determine what was the alleged agreement between the parties.

The evidence in support of the petition is subject to the same objection of indefiniteness. It is loose and vague

and falls short of the standard of proof required. In fact, it consists only of the testimony of admissions claimed to have been made by the appellant at a meeting with appellees and their husbands, lasting less than half an hour. It is not necessary to detail what took place at this meeting which appellees forced upon the appellant. The record shows that the persons present were all talking at one time, and that the appellant, an elderly man of seventy-six years and hard of hearing, was disconcerted and confused by the argument which ensued. He strongly denied at the hearing that he had then admitted to these appellees that there was an agreement with his wife whereby he had promised to take under her will, and his testimony in this respect is corroborated by that of his son and his two daughters-in-law, who were with him at the time. His version and recollection of what he said finds substantial support in the testimony of Marguerite Nixon, one of the appellees.

The material inquiry here must be whether the alleged agreement has been established by evidence which the courts have said in such cases must be clear, precise and unequivocal. In other words, the case resolves itself into the single question of the sufficiency of the proofs offered in the court below on behalf of the claim of appellees.

We have examined the record with care and have reached the conclusion that the appellees have failed to sustain the burden which they assumed and which the law casts upon them. There is nothing in the evidence or in the conduct of the appellant which would warrant the finding that there was a definite agreement on his part not to take against the will. It requires more clear and positive testimony than they adduced at the hearing to deprive appellant, as surviving spouse, of his statutory right of election. The alleged admissions made by appellant following the filing of his election to take against the will, in effect, would amount to no more than a mere expression by him that he was satisfied with the

will at the time it was made, but later, within the period allowed by law to file a formal election, he "changed his mind" when he found that the income of the estate was not adequate for his support. This he had the right to do, and the statement of approval or satisfaction with the will at the time it was made cannot be construed to be a promise on his part to waive his right of election, or be held to constitute an agreement binding upon him to take under the will. The conveyance of the Bryn Mawr Road property to the appellant was consistent with the desire of the wife that he should receive this property free from any trust provision of her will, and the testimony of Mr. Barron, as the scrivener of the deed and the will, leaves this question free from doubt. There is nothing in the record, except the testimony of two of the appellees, which would lend support to the contention that this conveyance was the consideration for the alleged agreement, or that it was induced by a promise of appellant to take under the will. It appears from the record that the conveyance was a voluntary act of the decedent, disassociated with her will or her estate.

The right to elect to take against the will of a deceased spouse has been recognized by statute in this Commonwealth for many years, and is not easily defeated. It cannot be taken away under an agreement unless proof of its terms is clear and positive, and there is sufficient consideration for the agreement. The decisions of this Court have consistently applied this principle. In most of the reported cases the question involves the right of election of the surviving wife, and of attempts made to deprive her of the right.

In *Anderson's App.*, 36 Pa. 476, it was contended that the widow had done such acts (such as accepting interest on a legacy given to her under the will) as to indicate an intention to take the bequests under the will, and she was precluded from election to take against it. The court below adopted this view and held that the acts of the widow amounted to an election *in pais*. Reversing

this finding, this Court held (page 493): "We have, therefore, in due form of law, the absolute election of the widow, made at the time pointed out by the law, to take her dower, and her one-third of the personal estate of the testator. The burden, therefore, of proof lies on those asserting her prior election to take the devise and bequest, under the will, to make that out clearly and positively, and with full knowledge, on her part, of her rights." And (page 496): "An election by matter *in pais,* can only be determined by plain and unequivocal acts, under a full knowledge of all the circumstances, and of the party's rights. One is not bound to elect until he is fully informed of the relative value of the things he is to choose between; and if he make an election before the circumstances necessary to a judicious and discriminating choice are ascertained, he will not be bound."

The acts of the surviving spouse in *Kreiser's App.,* 69 Pa. 194, go beyond what was alleged in bar of election in the case before us. There, the wife of the testator was present at the execution of the will and was made acquainted with its contents. At the same time in a writing signed by her she ratified and accepted it. The will was read the evening after the funeral and she stated she was satisfied with its provisions. She accepted personal effects bequeathed to her. Eight days thereafter she gave notice in writing to take against the will. The court below sustained her right so to elect. This Court affirmed the decree of the lower court.

In *Dickinson v. Dickinson,* 61 Pa. 401, a husband elected to take against the will of his deceased wife, notwithstanding he had received $150 apparently under the terms of the will. Referring to the right of election, Mr. Justice AGNEW, speaking for this Court, said (page 405): "An election *in pais* to take under a will, whether of husband or wife, should be clear and positive to prevent or estop a party from making it in a regular and proper form at law."

We have held that a surviving spouse is not bound by a statement that he or she is satisfied with the will when subsequently an election is made to take against it. See *Beck's Est.*, 265 Pa. 51, where the widow, four days after testator's death, when the will was read to her, expressed satisfaction therewith, and signed an election to take under it. Subsequently this Court permitted her to void this election because she was unfamiliar with the amount of the estate. The same question was before the Superior Court in *White's Est.*, 23 Pa. Superior Ct. 552. It was claimed there that the right of the widow was barred by a previous election to take under the will which it would be inequitable to permit her to revoke. The only evidence in support of this contention was the testimony of appellant that in a conversation which he had with the appellee shortly after the probate of the will, she declared that she knew her rights and would stand by the will. But this assertion was denied by her. The right to elect to take against the will was sustained.

In *McCutcheon's Est.*, 283 Pa. 157, Mr. Justice SADLER, speaking for this Court, said (page 162) : "If action has been taken by the wife or husband in ignorance of the value of the estate, or of the rights which would accrue under the provisions of the will as compared with the interests given by the intestate laws, then the first election may be set aside, and the distribution be made in the way provided by law."

In the present case the court below annulled the election upon the authority of *Osmond's Est.*, 161 Pa. 543. An entirely different factual situation was presented in that case. A fund was given to a wife in trust for her children. Upon the death of the wife, the husband elected to take against her will in order to obtain a portion of this trust fund. We held that a trust was created of the fund in question, which could be established by parol evidence. Mr. Chief Justice MITCHELL, delivering the opinion of this Court, said (page 550) : "The fund, though in the name of the decedent, being a trust,

was improvidently included in the executor's account, and there is no difficulty in allowing its withdrawal: *Qualter's Est.,* 147 Pa. 124."

Decree reversed and record remitted to the court below with directions that the election be reinstated, costs to be paid by the appellees.